In re GLOBALSANTEFE
CORPORATION,
Relator.

No. 07–0040.

Supreme Court of Texas.

Argued Jan. 16, 2008.

Decided Dec. 5, 2008.

Rehearing Denied Feb. 27, 2009.

John B. Hall, Christopher Benjamin Dove, Locke Lord Bissell & Liddell LLP, David R. Walker, Royster, Rayzor, Vickery & Williams, L.L.P., Houston, TX, for Realtor.

John Milton Black, Ian P. Cloud, Justin Ryan Goodman, Heard, Robins, Cloud & Lubel, L.L.P., Houston, TX, for Real Parties in Interest.

Michael K. Rose, F. William Mahley, Strasburger & Price, L.L.P., Stephen G. Tipps, Baker & Botts, L.L.P., Houston, TX, for Amici.

Justice WILLETT delivered the opinion of the Court.

In this original proceeding, GlobalSantaFe Corp. (GSF) asks this Court to direct the silica MDL pretrial court to vacate its order remanding this case to the trial court where it was originally filed. The pretrial court concluded that Chapter 90 of the Civil Practice and Remedies Code, applicable to certain silica-related cases and under which the case had been transferred to the pretrial court, was inoperative because it was preempted by the Jones Act, a federal maritime statute. We agree with GSF that the general procedural framework set out in Chapter 90 is not preempted, although we also hold that Chapter 90's minimal-impairment provision relating to silica claims is preempted. We conditionally grant mandamus relief.

## I. Background

In May 2003, John Lopez sued GSF under the Jones Act, alleging injuries from exposure to asbestos and silica while

employed by GSF aboard a vessel.[1] Lopez filed his Jones Act suit in state court, as allowed by federal law,[2] in the 55th district court of Harris County.

Two years later, Chapter 90 of the Civil Practice and Remedies Code became effective,[3] adopting unique procedures for personal-injury actions alleging injuries from silica and asbestos.[4] We focus here on the requirements relating to silica claims.[5]

Section 90.004 requires silica claimants to serve a detailed expert report on each defendant. Among other requirements, the report must be prepared by a physician who has specific qualifications,[6] and the physician (or other medical professional "employed by and under the direct supervision and control of the physician") must perform a physical examination of the claimant and take a detailed occupational, exposure, medical, and smoking history.[7]

The report must verify that the claimant suffers from one or more silica-related diseases based on recognized symptoms.[8] It must attach all medical evidence supporting the physician's opinion.[9] The report must also verify that the physician has made certain causation findings regarding silica exposure and the claimant's observed ailments.[10] The report must make these causation determinations depending on the type of silica-related disease asserted.[11]

If the claimant is asserting a claim for silicosis, the report must verify a minimal level of impairment under section 90.004(b)(2), requiring "at least Class 2 or higher impairment due to silicosis, according to the American Medical Association Guides to the Evaluation of Permanent Impairment...."

Section 90.010(a) provides that "[t]he MDL rules apply to any action pending on the date this chapter becomes law in which the claimant alleges personal injury or

1. The Jones Act provides a cause of action to seamen injured in the course of their employment. 46 U.S.C. § 30104.

2. Under the "saving to suitors" clause of 28 U.S.C. § 1333(1), a Jones Act claim can be brought in state court. *See Engel v. Davenport*, 271 U.S. 33, 37, 46 S.Ct. 410, 70 L.Ed. 813 (1926); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 428–29 (Tex.1999).

3. *See* Act of May 16, 2005, 79th Leg., R.S., ch. 97, § 12, 2005 Tex. Gen. Laws 169, 182 (adopting September 1, 2005 effective date).

4. TEX. CIV. PRAC. & REM.CODE §§ 90.001–90.012.

5. Although Lopez alleged injuries from both asbestos and silica, GSF filed a notice of transfer to the silica MDL pretrial court, and this mandamus action concerns that court's decision to remand the case to the trial court where it was originally filed. We focus, therefore, on the Chapter 90 components relating to silica-related injuries.

6. The report must be prepared "by a physician who is board certified in pulmonary medicine, internal medicine, oncology, pathology, or, with respect to a claim for silicosis, occupational medicine and whose license and certification were not on inactive status at the time the report was made." *Id.* § 90.004(a).

7. *Id.* §§ 90.004(a)(1)-(2), (e).

8. *Id.* § 90.004(a)(3).

9. *Id.* § 90.004(a)(4).

10. *Id.* §§ 90.004(b)—(d).

11. *Id.* For example, section 90.004(d) states, "If the claimant is asserting a claim for any disease other than silicosis and lung cancer alleged to be related to exposure to silica, the report required by Subsection (a) must also verify that the physician has diagnosed the exposed person with a disease other than silicosis or silica-related lung cancer and has concluded that the exposed person's disease is not more probably the result of causes other than silica exposure."

death from exposure to asbestos or silica," subject to certain exceptions. Relevant MDL rules are set out in Rule 13 of the Texas Rules of Judicial Administration, created by this Court pursuant to legislative authority.[12] The 295th district court of Harris County is the MDL pretrial court for personal-injury suits alleging silica exposure.[13] Generally, the MDL pretrial court decides all pretrial matters and then remands the case to the trial court.[14]

Section 90.006(a) provides, for actions filed on or after the statute's September 1, 2005 effective date, the expert report must be served not later than thirty days after the defendant answers or otherwise appears. For actions filed after the effective date, the defendant may file a motion to dismiss if the claimant fails to file an expert report or files one that does not comply with section 90.003 (asbestos claims) or 90.004 (silica claims).[15]

For actions like this one filed before September 1, 2003, the MDL rules are inapplicable if the plaintiff files an expert report complying with the expert report requirements of Chapter 90.[16] The report is due within 90 days of Chapter 90's September 1, 2005 effective date.[17] If the plaintiff misses this deadline for filing a compliant report, the defendant may file a notice of transfer to the MDL pretrial court.[18] Section 90.010(b) provides:

If the claimant fails to serve a report complying with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law under Subsection (a)(2), the defendant may file a notice of transfer to the MDL pretrial court. If the MDL pretrial court determines that the claimant served a report that complies with Section 90.003 or 90.004 on or before the 90th day after the date this chapter becomes law, the MDL pretrial court shall remand the action to the court in which the action was filed. If the MDL pretrial court determines that the report was not served on or before the 90th day after the date this chapter becomes law or that the report served does not comply with Section 90.003 or 90.004, the MDL pretrial court shall retain jurisdiction over the action pursuant to the MDL rules.

The notice of transfer automatically transfers the case without further court order,[19] subject to a motion to remand filed in the MDL court and a remand by that court if it determines that the plaintiff had filed a compliant report.[20] Absent a successful motion to remand, cases thus transferred to the MDL court remain in that court until the claimant serves a Chapter 90–compliant report.[21]

---

12. *See* Tex. Gov't Code §§ 74.024, 74.163.

13. *See In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3 (Tex. M.D.L. Panel 2004) (granting motion to establish Silica MDL pretrial court); Tex. Gov't Code § 74.162 (authorizing judicial panel on multidistrict litigation to transfer cases to MDL pretrial court).

14. *See* Tex. Gov't Code § 74.162; Tex.R. Jud. Admin. 13.6, 13.7, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. (Vernon).

15. Tex. Civ. Prac. & Rem.Code § 90.007(a).

16. *Id.* § 90.010(a)(2).

17. *Id.* Section 90.010(a)(3) separately provides that the MDL rules do not apply to actions filed before September 1, 2003, if the claimant "has been diagnosed with malignant mesothelioma, other malignant asbestos-related cancer, or malignant silica-related cancer."

18. *Id.* § 90.010(b).

19. *See* Tex.R. Jud. Admin. 13.11(e).

20. Tex. Civ. Prac. & Rem.Code § 90.010(b).

21. *Id.* § 90.010(d). Besides the provisions concerning expert reports and proceedings

Contending that Lopez did not file a report complying with Chapter 90, GSF filed on December 2, 2005, a notice of transfer to the silica MDL pretrial court. Lopez responded, arguing Chapter 90 was preempted by the Jones Act and urging the MDL pretrial court to remand the case to the trial court. The MDL pretrial court agreed. GSF sought mandamus relief in the court of appeals, which also sided with Lopez by holding that "chapter 90 is preempted by federal law." [22] GSF now seeks mandamus relief in this Court directing the MDL pretrial court to vacate its remand order.

## II. Discussion

### A. The "Asbestos Litigation Crisis" Addressed by Chapter 90

The statute enacting Chapter 90 and other codified provisions begins with legislative findings concerning asbestos and silica litigation. The Legislature stressed the existence of an "asbestos litigation crisis," [23] noting that Texas leads the nation in such suits. [24] It found that this problem is exacerbated by the filing of suit, sometimes to avoid limitations problems, before the claimant is suffering from any illness affecting his daily life. [25] The Legislature made further findings that this litigation has resulted in the bankruptcies of many companies, the loss of thousands of jobs, enormous litigation expenses, overcrowded dockets that hamper the ability of seriously ill claimants to seek redress, and the bleeding of company assets lost to a crush of claims by those "who are not functionally or physically impaired." [26] It warned of a similar crisis looming over silica-related actions, evidenced by a recent spike in such claims, and raising some of the same concerns applicable to the asbestos crisis. [27] The statute further provides:

> It is the purpose of this Act to protect the right of people with impairing asbestos-related and silica-related injuries to pursue their claims for compensation in a fair and efficient manner through the Texas court system, while at the same time preventing scarce judicial and litigant resources from being misdirected by the claims of individuals who have been exposed to asbestos or silica but have no functional or physical impairment from asbestos-related or silica-related disease. [28]

To address the Legislature's stated purposes and concerns, Chapter 90 includes three components on which we focus. First, by requiring detailed expert reports early in the litigation process, Chapter 90 endeavors to assure that claims are not brought and pursued unless they are supported by reliable expert evaluations of the claimant. [29]

---

before an MDL court, Chapter 90 has other miscellaneous provisions. For example, section 90.009 provides, "Unless all parties agree otherwise, claims relating to more than one exposed person may not be joined for a single trial."

**22.** —— S.W.3d at ——.

**23.** Act of May 16, 2005, 79th Leg., R.S., ch. 97, §§ 1(d),(f), 2005 Tex. Gen. Laws 169; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (also noting an "asbestos-litigation crisis" confronting the nation).

**24.** Act of May 16, 2005, 79th Leg., R.S., ch. 97, § 1(e), 2005 Tex. Gen. Laws 169.

**25.** *Id.* § 1(f).

**26.** *Id.* §§ 1(g)—(h), 2005 Tex. Gen. Laws 169–70.

**27.** *Id.* §§ 1(*l*)—(m), 2005 Tex. Gen. Laws 170.

**28.** *Id.* § 1(n).

**29.** *See* TEX. CIV. PRAC. & REM.CODE §§ 90.003–90.004.

Second, Chapter 90 attempts to consolidate silica and asbestos cases in a single MDL court for pretrial proceedings.[30] The obvious advantages of such consolidation include (1) the more efficient resolution of recurring issues by a court that acquires expertise in cases with related factual, procedural, and substantive legal issues; and (2) consistent rulings in such cases. The Legislature has authorized MDL transfers where they will serve the convenience of parties and witnesses and "promote the just and efficient conduct of the [consolidated] actions."[31] It has empowered the judicial panel on multidistrict litigation to transfer related cases to MDL courts for "consolidated or coordinated pretrial proceedings."[32] In creating the silica pretrial MDL action, the panel observed:

> One virtue of transferring related cases to a single pretrial judge is that issues, once raised, will be decided the same way in the future. A consistent and steady judicial hand at the helm should in fact promote agreements because lawyers will know where the court stands on recurring issues. As contested issues arise, the pretrial judge will make consistent rulings, which can then be reviewed by the appellate courts as appropriate. This, we think, serves Rule 13's goal that our system give related cases consistent and efficient treatment.[33]

Third, Chapter 90 requires claimants in some cases to establish a minimal level of impairment before their cases can proceed.[34]

These procedures serve the stated legislative purpose of conserving judicial and litigant resources and directing those resources to persons most suffering from asbestos and silica injuries. Of these three Chapter 90 components, we conclude that only the third is preempted by the Jones Act; the other two are not preempted and should be followed in Jones Act cases.[35]

## B. Mandamus Relief is Warranted

 A writ of mandamus will issue only if the trial court committed a clear abuse of discretion for which the relator has no adequate remedy at law.[36] The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against its detriments.[37] In evaluating benefits and detriments, we consider whether mandamus relief will safeguard "important substantive and procedural rights from impairment or loss."[38] In addition to impairment of rights, we consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments."[39]

30. *See id.* § 90.010.

31. Tex. Gov't Code § 74.162.

32. *Id.*

33. *In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2004).

34. *See* Tex. Civ. Prac. & Rem.Code § 90.004(b)(2).

35. Some causation provisions of Chapter 90 may also be preempted. *See infra* note 79 and accompanying text.

36. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding).

37. *In re McAllen Med. Ctr.*, 275 S.W.3d 458, 2008 WL 4051053 (Tex. 2008) (orig. proceeding); *Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

38. *Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

By remanding the case to the trial court, the MDL pretrial court in effect held that, at least as to Lopez, Chapter 90 in its entirety is preempted by the Jones Act. This is so because Chapter 90 prescribes, as a result of a plaintiff's failure to file an adequate section 90.004 report, the defendant's right to file a notice of transfer to the MDL pretrial court, as described above. That court then retains, dismisses, or remands the case back to the trial court depending on whether the report is filed.

■ The MDL pretrial court's conclusion that Chapter 90 was preempted by the Jones Act was erroneous and mandamus relief is appropriate to correct the error. As we recently held in *In re McAllen Medical Center*, another case concerning legislatively mandated expert reports, mandamus relief is available when the Legislature has enacted a statute to address findings "that traditional rules of litigation are creating an ongoing crisis," and "the purposes of the [enacted] statute would otherwise be defeated." [40] These precise grounds for mandamus relief are again presented. "Here, the Legislature has already balanced most of the relevant costs and benefits for us." [41]

## C. Jones Act Preemption Principles

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law . . . against the employer." [42] The Act has been described as "remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty." [43]

■ The preemption of state law by the Jones Act is a unique corner of federal preemption law that must be applied with recognition that Jones Act cases can be brought in federal or state court.[44] While state law must sometimes yield to the need for a uniform and harmonious system of federal maritime law, "this limitation still leaves the States a wide scope." [45] Congress could preempt the entire field of maritime law, but has instead left the states "with a considerable legislative and judicial competence in the maritime field." [46] Where Congress has acted in the admiralty area, "state regulation is permissible, absent a clear conflict with the federal law." [47]

Federal preemption in this context does not always lend itself to simple resolution. As the United States Supreme Court observed in one Jones Act case, "It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely

39. *Id.*

40. 275 S.W.3d at 462.

41. *Id.* at 466.

42. 46 U.S.C. § 30104.

43. *The Arizona v. Anelich*, 298 U.S. 110, 123, 56 S.Ct. 707, 80 L.Ed. 1075 (1936).

44. *See supra* note 2. We have noted that preemption cases arising under admiralty law typically do not even mention the more general line of preemption authority under the Supremacy Clause. *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 428 (Tex.1999).

45. *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 373, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

46. David W. Robertson, *Displacement of State Law by Federal Maritime Law*, 26 J. Mar. L. & Com. 325, 327 (1995).

47. *Askew v. Am. Waterways Operators*, 411 U.S. 325, 341, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973).

consistent within our admiralty jurisprudence." [48]

■ The Court, however, has laid down some general principles. On the one hand, *substantive* rights created by Congress via the Jones Act must prevail over inconsistent state substantive law even where the suit is brought in state court.[49] On the other hand, it has held that state law characterized as *procedural* is not preempted.[50] The Court has also recognized that federal maritime law follows a "reverse *Erie*" doctrine of sorts, employing the use of substantive federal maritime law in state courts but recognizing that state procedural law can be followed.[51]

Our own cases have recognized this general proposition that a state court hearing a Jones Act case "must apply substantive federal maritime law but follow state procedure," [52] and have acknowledged the "reverse *Erie*" nature of state court adjudication of Jones Act claims.[53] Unfortunately, a simple rule of Jones Act preemption—providing that such cases litigated in state court follow federal substantive law and state procedural law—cannot be fashioned from the extant jurisprudence. For example, even as to substantive remedies, we have recognized that "state law remedies that do not conflict with federal law remedies are available to seamen." [54]

In *Southern Pacific Co. v. Jensen*,[55] the United States Supreme Court held that a state workers' compensation law was preempted by federal general maritime law. In an oft-recited standard, the Court held that a state-law remedy is preempted by federal maritime law if the state remedy "works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." [56] Because the state law remedy in *Jensen* was "wholly unknown" to federal maritime common law, "incapable of enforcement by the ordinary processes of any court," and inconsistent with congressional policy to encourage

---

**48.** *Am. Dredging Co. v. Miller*, 510 U.S. 443, 452, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

**49.** *See Engel v. Davenport*, 271 U.S. 33, 39, 46 S.Ct. 410, 70 L.Ed. 813 (1926) (holding that the Jones Act statute of limitations is a "provision affecting the substantive right" created by the Jones Act and must prevail over inconsistent state statute of limitations).

**50.** *Am. Dredging Co.*, 510 U.S. at 453, 114 S.Ct. 981 (characterizing the state doctrine of *forum non conveniens* as "procedural rather than substantive" and noting that "[u]niformity of process (beyond the rudimentary elements of procedural fairness) is assuredly not what the law of admiralty seeks to achieve, since it is supposed to apply in all the courts of the world").

**51.** *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222–23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) ("Stated another way, the 'savings to suitors' clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.").

**52.** *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.1998).

**53.** *Texaco Ref. & Mktg., Inc. v. Estate of Dau Van Tran*, 808 S.W.2d 61, 64 (Tex.1991).

**54.** *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 425 (Tex.1999); *see also* Robertson, *supra* note 46, at 348 ("Anyone who began studying law after 1940 will have been brought up on two rather intimidating notions about drawing the substance-procedure distinction: it is done differently in different contexts, and in all contexts it is hard to do." (footnotes omitted)).

**55.** 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

**56.** *Id.* at 216, 37 S.Ct. 524.

investments in ships, as indicated by two federal statutes, the Court held that the state remedy was preempted by federal law.[57]

In *American Dredging Co. v. Miller*, the Court held in a Jones Act case that a Louisiana rule making inapplicable the doctrine of *forum non conveniens* in maritime cases was not preempted by federal maritime law.[58] Looking to the *Jensen* standard quoted above, the Court noted that the federal doctrine of *forum non conveniens* is a doctrine of general application and did not originate in admiralty; therefore, the Louisiana rule did not work material prejudice to a characteristic feature of general maritime law.[59] Although recognizing that the state rule produced some disuniformity, the Court rejected the argument that, under the *Jensen* standard, the rule interfered with the proper harmony and uniformity of federal maritime law.[60] The Court reasoned that the uniformity requirement is not absolute, especially on matters of procedure.[61] It noted that uniformity of process is not required by admiralty law, that the doctrine of *forum non conveniens* "is nothing more or less than a supervening venue provision," and that venue "goes to process rather than substantive rights—determining which among various competent courts will de-

cide the case."[62] The Court also noted it had previously held that venue in Jones Act cases brought in state court should be decided under state law,[63] and that "[j]ust as state courts, in deciding admiralty cases, are not bound by the venue requirements set forth for federal courts in the United States Code, so also they are not bound by the federal common-law venue rule (so to speak) of *forum non conveniens*."[64]

### D. Application of Preemption Principles to this Case

#### 1. Non–Preempted Provisions

■ The requirements embedded in Chapter 90 to assure reliable expert confirmation of silica-related diseases are not preempted by the Jones Act. Nothing in the Jones Act exempts a seaman claiming a silica-related disease from establishing, through reliable medical proof, that he in fact suffers from such a disease. Federal cases, beginning with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[65] have in recent years established standards for the admission of expert testimony that focus on the trial court's role in determining the reliability of such testimony. Texas cases have developed similar standards that draw heavily from federal jurisprudence.[66]

57. *Id.* at 218, 37 S.Ct. 524.

58. 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

59. *Id.* at 450, 114 S.Ct. 981.

60. *Id.* at 450–53, 114 S.Ct. 981.

61. *Id.* at 451, 114 S.Ct. 981.

62. *Id.* at 453, 114 S.Ct. 981.

63. *Id.* at 457, 114 S.Ct. 981 (discussing *Bainbridge v. Merch. & Miners Transp. Co.*, 287 U.S. 278, 53 S.Ct. 159, 77 L.Ed. 302 (1932)).

64. *Id.* at 453, 114 S.Ct. 981.

65. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

66. *See, e.g., Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 579 (Tex.2006) (applying *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)); *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 720–28 (Tex.1998) (applying *Daubert* and *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), and recognizing that relevancy and reliability requirements under *Daubert's* interpretation of Federal Rule of Evidence 702 are also applicable to Texas Rule of Evidence 702); *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 712 (Tex.1997) (stating that relia-

Both federal and state law require expert testimony "grounded 'in the methods and procedures of science.' " [67]

To the extent that Jones Act jurisprudence recognizes a special standard for proving causation,[68] federal cases have held that this causation standard does not exempt Jones Act cases from the general rules for admission of expert testimony.[69] We see no basis for holding that Texas law generally governing the admission of expert testimony, which draws so heavily from federal law, is preempted by the Jones Act. This law does not clearly conflict with federal maritime law. Under *Miller* and *Jensen*, the jurisprudence requiring reliable expert testimony has developed in tandem in the federal and Texas courts, and is a body of law of general application; the use of these general standards does not work material prejudice to a characteristic feature of general maritime law. Nor do we see how the use of such standards, which apply to Jones Act cases proceeding in federal court, would

interfere with the proper harmony and uniformity of federal maritime law.

Therefore, the provisions of Chapter 90 directed at assuring reliable expert confirmation of the existence of one of the medically recognized forms of silica-related illness are not preempted. Most of the expert-report requirements of section 90.004 can be so characterized. Section 90.004 tracks widely if not universally recognized criteria for reliably diagnosing the existence of silica-related illnesses by (1) conducting a physical examination by a trained professional that includes an appropriate occupational and exposure history under section 90.004(a)(1), (a)(2), and (e); (2) identifying a silica-related condition based on established radiographic methods and tests employed by medical science under section 90.004(a)(3) and (a)(4); and (3) ruling out other causes of the observed condition under sections 90.004(b) through (d).[70] The failure to establish these criteria is grounds for rejecting expert testimony under *Daubert*.[71]

bility of expert testimony under Texas law "is determined by looking at numerous factors including those set forth in *Robinson* and *Daubert*"); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556–58 (Tex.1996) (stating that "[w]e are persuaded by the reasoning in *Daubert*" and adopting standards for admission of expert testimony consistent with *Daubert's* focus on relevance and a reliable foundation).

**67.** *Robinson*, 923 S.W.2d at 557 (quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786).

**68.** *See infra* note 79.

**69.** *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir.2004) (holding that even though a Jones Act "plaintiff faces a relaxed burden of proof with regard to causation, the district court's admission of expert testimony is nonetheless governed by the strictures of [Evidence] Rule 702 and *Daubert*," and noting that the Sixth and Ninth Circuits have reached the same conclusion).

**70.** *See In re Silica Prods. Liab. Litig.*, 398 F.Supp.2d 563, 622 (S.D.Tex.2005) ("A diagnosis [of silicosis] requires (1) an adequate exposure to silica dust with an appropriate latency period, (2) radiographic evidence of silicosis, and (3) the absence of any good reason to believe that the radiographic findings are the result of some other condition.... [T]hese three criteria are universally accepted, as demonstrated by learned treatises and experts in the field.").

**71.** *See id.* at 624–25:

In the absence of an appropriate work/exposure history, there is no way for the diagnosing doctors to have known the potential intensities of respirable silica exposure, the duration of the exposure, information as to dosage ... as well as information as to possible alternative causes of the radiographic findings.... Looking no further than the first criterion, virtually all of the diagnoses fail to satisfy the minimum, medically-acceptable criteria for the diagnosis of silicosis, and therefore, the testimony of the

As examples, the requirement of section 90.004(a)(1) that a board-certified physician conduct a detailed occupational and exposure history is directed at assuring— early in the litigation so as to conserve judicial and litigant resources—that the claim of silica-related injury is supported by medically reliable expert review. "In order to rule out the multitude of other causes of the radiographic findings, it is vitally important for a physician to take a thorough occupational/exposure history and medical history."[72] The requirement of section 90.004(a)(3)(A), that the expert observe bilateral nodular opacities categorized as p, q, or r primarily in the upper lungs, is a standardized method of medical science to identify chronic or classic silicosis and distinguishing it from asbestosis.[73] The requirements specifying a minimal latency period, such as section 90.004(b)(1)'s requirement that the report for a claimant alleging silicosis verify that "there has been a sufficient latency period for the applicable type of silicosis," are also intended to assure that the claimant is in fact suffering from a silica-related disease under established medical science.[74] The requirement that a qualified reader find a profusion grading of 1/0 or 1/1, found in section 90.004(a)(3)(A), assures that the reader has found at least some abnormality in the x-ray.[75] All of these requirements represent the Legislature's attempt to require a medically valid demonstration of silica-related disease as opposed to mere exposure to silica or some other substance or mere concern that a disease may develop in the future.

■ Nor are Chapter 90's provisions for consolidating silica-related cases in a single court for pretrial disposition preempted by the Jones Act. These provisions serve an important state purpose, recognized by the Legislature, of streamlining the resolution of silica cases in the state court system and thus conserving judicial and litigant resources. Moreover, as discussed above, Jones Act preemption principles recognize that Jones Act cases can

challenged doctors cannot be admissible under the standards set by Rule 702 and *Daubert.* (footnote omitted). *See also Borg–Warner Corp. v. Flores,* 232 S.W.3d 765, 771–72 (Tex. 2007) ("[A]bsent any evidence of dose, the jury could not evaluate the quantity of respirable asbestos to which Flores might have been exposed or whether those amounts were sufficient to cause asbestosis.").

72. *In re Silica Prods. Liab. Litig.,* 398 F.Supp.2d at 593 (also noting that "it is imperative that the diagnosing physician take at least some portion of the histories").

73. *See id.* at 591–92 (noting that chronic or classic silicosis is characterized by small round nodules, primarily in the upper lungs, indicated by a p, q, or r rating under the International Labour Office (ILO) system standardizing the interpretation of chest x-rays, and that asbestosis is characterized by linear scarring primarily in the lower lungs, characterized by irregular opacities indicated by an s, t, or u rating in the ILO system); *see*

*also id.* at 603 (noting that one testing company "managed to generate" 6,757 MDL silicosis plaintiffs, of which 4,031 had previously made asbestosis claims, and that "[t]he magnitude of this feat becomes evident when one considers that many pulmonologists, pathologists and B-readers go their entire careers without encountering a single patient with both silicosis and asbestosis"). Sections 90.003(a)(2)(C) and 90.003(c)(2), applicable to asbestos-related claims, therefore specify that asbestosis can be verified by an x-ray showing irregular opacities indicated by an s, t, or u rating, among other requirements.

74. *See id.* at 569 ("Chronic or classic silicosis, the most common form, typically requires at least 15–20 years of moderate to low exposure of respirable silica.").

75. *See id.* at 591 (explaining that 1/0 and 1/1 ILO designations indicate some abnormality, while a first number of "0" indicates no abnormality found, and first numbers greater than "1" indicate increasingly abnormal readings).

be brought in federal or state courts and that adherence to precisely the same rules of procedure and practice are not required. Texas courts are not expected to abandon all their regular rules of practice and procedure and to adopt federal rules in a case simply because a Jones Act claim is alleged. On the contrary, maritime law recognizes a "reverse-*Erie*" principle that generally leaves state courts hearing maritime suits to their regular procedures. *American Dredging* recognized that matters of venue have long been the province of state law in Jones Act cases brought in state court. As with the doctrine of *forum non conveniens* analyzed in *American Dredging,* the transfer of silica-related Jones Act cases to the MDL pretrial court is a "supervening venue provision" [76] where state court procedures can be followed. The transfer of silica-related cases to an MDL court for consolidated pretrial proceedings does not work material prejudice to a characteristic feature of maritime law.

In short, the principles of Jones Act preemption are flexible enough to accommodate general Texas rules governing the admission of expert testimony, and also accommodate the Chapter 90 rules specific to expert testimony in cases involving silica-related injuries and the consolidation of silica cases in the MDL pretrial court for pretrial proceedings. These Texas rules and standards are not preempted.

### 2. Preemption of Minimal–Impairment Provision

 The Jones Act imposes no requirement for a minimal threshold of physical injury, nor any limitation that only lung diseases that have progressed to a specified level of physical impairment are covered.[77] GSF concedes that Chapter 90 cannot impose a requirement that the plaintiff suffer from a minimal level of physical impairment before he can obtain relief on his Jones Act claim. Accordingly, section 90.004(b)(2), providing that claimants alleging silicosis must have sustained "at least Class 2 or higher impairment" cannot be applied to Jones Act claims.[78] We further conclude that Chapter 90 must not be interpreted to impose a higher standard of proof for causation than the federal standard applicable to Jones Act cases.[79]

---

**76.** *Am. Dredging Co. v. Miller,* 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994).

**77.** We do not mean to suggest that the Jones Act dispenses entirely with a requirement of physical injury, only that we are unaware of a minimal level of physical impairment under the Act. *See Norfolk & W. Ry. Co. v. Ayers,* 538 U.S. 135, 141, 159, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) (holding that in a case brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, a plaintiff already suffering from asbestosis can recover emotional distress damages associated with fear of developing cancer, but a disease-free plaintiff merely exposed to asbestos cannot recover emotional distress damages); *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998) ("The Jones Act expressly incorporates FELA and the case law developing that statute.").

**78.** We again note that we have not examined the provisions of Chapter 90 relating to asbestos-related claims, and express no opinion on whether any such provisions are preempted.

**79.** *See Mar. Overseas Corp.,* 971 S.W.2d at 406 (stating that the Jones Act requires use of a relaxed causation standard, one that asks whether "employer negligence played any part, even the slightest, in producing the injury") (quoting *Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)); *but see Norfolk S. Ry. Co. v. Sorrell,* 549 U.S. 158, 172–77, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) (Souter, J., concurring) (concluding, in FELA case, that *Rogers* has been misinterpreted and did not alter the common-law causation standard, but instead merely rejected a sole causation requirement); *see also id.* at 178, 127 S.Ct. 799 (Ginsburg, J., concurring in the judgment)

The preemption of section 90.004(b)(2) does not mean that the remaining expert-report requirements of Chapter 90 and its provisions for pretrial proceedings in the MDL pretrial court are preempted. We hold that these non-preempted provisions should be followed in all applicable suits alleging silica-related injuries and including a cause of action under the Jones Act. The MDL pretrial court therefore erred in remanding this case to the trial court.

## III. Conclusion

We conditionally grant the writ of mandamus and direct the MDL pretrial court to vacate its remand order, and to conduct further proceedings in a manner consistent with this opinion.[80] We are confident the court will comply, and the writ will issue only if it does not.

("Today's opinion leaves in place precedent solidly establishing that the causation standard in FELA actions is more 'relaxed' than in tort litigation generally.").

**80.** Lopez contends in the pending mandamus action, apparently for the first time, that he filed a physician report that complied with

the non-preempted provisions of Chapter 90. GSF contends otherwise. The MDL pretrial court and the court of appeals did not consider this issue, and instead based their analysis on Lopez's argument that Chapter 90 was entirely inapplicable to Jones Act cases. We leave resolution of this issue to the MDL pretrial court.