**Affirmed and Plurality and Dissenting Opinions filed September 29, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00639-CV

---

**SEAN MORRIS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DOUGLAS MORRIS, DECEASED, Appellant**

**V.**

**PEARSON DENTAL SUPPLIES, INC.; ZAHN DENTAL SUPPLY, A DIVISION OF HENRY SCHEIN, INC.; HENRY SCHEIN, INC.; DFW DENTAL SUPPLIES; 3M COMPANY; CROSSTEX INTERNATIONAL, INC.,; HEDON DENTAL SUPPLY, INC.; ALPHA PRO TECH, INC.; NATIONAL DENTEX CORPORATION; AND GDC HOLDINGS. INC., Appellees**

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2019-51437**

---

### PLURALITY OPINION

Appellant Sean Morris, both individually and as representative of the estate of his late father, Douglas Morris, appeals the trial court's dismissal of his claims without prejudice against appellees for failure to file a statutorily compliant expert

report.  Appellees filed a motion to dismiss appellant's claims because appellant failed to provide an expert report in compliance with Sections 90.004 or 90.010 of the Texas Civil Practice and Remedies Code.  We affirm.

## I.  GENERAL BACKGROUND

In July 2019, appellant filed suit against appellees for the wrongful death of appellant's father, Douglas, who had worked as a "dental molding technician and grinder."  Douglas died in 2017 at the age of 63.  Appellant alleges that "workplace exposure to silica dust" caused Douglas's death due to silicosis.  Appellant filed suit in district court alleging claims against multiple defendants for Douglas's alleged silicosis and damages related thereto.  Because appellant asserted a silica-related injury, appellant was required to serve an expert report under Chapter 90 of the Texas Civil Practice and Remedies Code.  *See* Tex. Civ. Prac. & Rem. Code §§ 90.004, 90.006.

About three months after suit was filed, appellee 3M Company filed a motion to dismiss alleging appellant had failed to provide a statutorily compliant expert report that complied with Chapter 90.  By March 2020, after numerous separate motions were filed and set for hearing, appellees had joined together in filing a single joint motion to dismiss.  Appellees set the hearing on the joint motion for April 2020.

In April 2020, the trial court found that "the current papers before the Court are not compliant with the report requirements of Chapter 90 of the Texas Civil Practice and Remedies Code" and gave appellant an additional 90 days to comply with the statutory requirements.

In early July 2020, appellant filed a new expert report from a new expert, Dr. Haber (the Expert).  Appellees again filed a motion to dismiss for failure to comply

2

with Chapter 90. Appellees set the motion for hearing, and a hearing occurred in August. The trial court sustained all of appellees' objections to the expert report and granted appellees' original and supplemental motions to dismiss. Pursuant to the statute, the case was dismissed without prejudice.

## II. DETAILED OCCUPATIONAL AND EXPOSURE HISTORY

In his fifth issue, appellant argues that even though the Expert did not personally take a detailed occupational and exposure history from a person knowledgeable about the alleged exposure as required by Section 90.004(a), that because his expert "identified occupational exposure histories provide by Douglas to at least five board-certified pulmonary treating physicians," that the expert report complied with the statute. In his sixth issue, appellant argues that even if the expert report did not comply with Section 90.004, it complied with 90.010(f). Because both sections require a "detailed occupational and exposure history," we consider them together. *See* Tex. Civ. Prac. & Rem. Code §§ 90.004(a)(1)(B), 90.010(f).

### A. General Legal Principles

We review a trial court's dismissal for failure to comply with the expert report requirement of Chapter 90 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *Union Carbide Corp. v. Synatzske*, 386 S.W.3d 278, 295 (Tex. App.—Houston [1st Dist.] 2012), *rev'd on other grounds*, 438 S.W.3d 39 (Tex. 2014). "[B]y requiring detailed expert reports early in the litigation process, Chapter 90 endeavors to assure that claims are not brought and pursued unless they are supported by reliable expert evaluations of the claimant." *In re GlobalSantaFe Corp.*, 275 S.W.3d 477, 482 (Tex. 2008). "The requirement of Section 90.004(a)(1) that a board-certified physician conduct a detailed occupational and exposure history is directed at assuring—early in the litigation so

as to conserve judicial and litigant resources—that the claim of silica-related injury is supported by medically reliable expert review." *Id.* at 488. Section 90.004(a) requires that the claimant serve a report:

> [B]y a physician . . . . that:
>
> > (1)  verifies that the physician or a medical professional employed by and under the direct supervision and control of the physician:
> >
> > . . .
> >
> > > (B)  took a detailed occupational and exposure history from the exposed person or, if the exposed person is deceased, from a person knowledgeable about the alleged exposure or exposures that form the basis of the action; . . . .
>
> Such detailed occupational and exposure history must describe:
>
> > (1)  the exposed person's principal employments and state whether the exposed person was exposed to airborne contaminants, including silica and other dusts that can cause pulmonary impairment; and
> >
> > (2)  the nature, duration, and frequency of the exposed person's exposure to airborne contaminants, including silica and other dusts that can cause pulmonary impairment.

Tex. Civ. Prac. & Rem. Code § 90.004(e).

If a claimant fails to serve an expert report compliant with Section 90.004, the claimant may avoid dismissal by serving a report that complies with the "alternative safety valve requirements." *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 51 (Tex. 2014); *see also* Tex. Civ. Prac. & Rem. Code § 90.010(e), (f). Under the "alternative safety valve requirements" the trial court must conduct an evidentiary hearing and make certain factual findings. *See* Tex. Civ. Prac. & Rem. Code § 90.010(e)(2), (f)(2). Under these alternative requirements, a claimant must serve a report that "complies with the requirements of . . . Section

4

90.004(a)(1), (2), and (4) and 90.004(e)." *Id.* § 90.010(f)(1)(A). Thus, even the alternative requirements provide that a detailed occupational and exposure history be taken and that such report also provide the "nature, duration, and frequency" of the alleged exposure. *See id.* § 90.004(a)(1), (e); *see also Union Carbide Corp.*, 438 S.W.3d at 52–53.

## B.    Factual Background

Appellant admits that the Expert's report "summarized the histories taken by Douglas['s] treating physicians" and that the other "board-certified physicians did . . . take a history . . . [from] Douglas." The Expert's report indicated that since Douglas had died prior to the Expert being retained, that the Expert was unable to speak with Douglas and instead "reviewed thousands of pages of his medical records and other available materials relating to his medical condition and occupational and exposure history." In his brief, appellant summarizes the occupational exposure histories taken by Douglas's multiple physicians as follows:

- [Douglas] provided literature from employment regarding inhalation of silica particles causing silicosis. He is not wearing a mask at work.

- [Douglas] does carry a diagnosis of silicosis due to many decades of exposure to materials used in dental case and molds.

- [Douglas] somehow continues to work at the dental practice making molds.

- [Douglas] became symptomatic from a pulmonary standpoint in 2008. During that time, he was working for a dental lab making dentures that used high heat investment with silica in it. He was wearing a general mask while working with that, but no respirator.

- [D]enture manufacture for 42 years . . . he reports pulmonary related exposures to silica with grinding dentures.

- [Douglas's] employment entails making moldings for dental

5

devices. He is in the same building where grinding of silicates occurs. There is not a separate ventilation system.

- In medical histories taken by [Douglas's] numerous pulmonary specialists, [Douglas] reported to his doctors that he was exposed to silica dust during his career in the dental manufacturing industry.

- [Douglas's] employment entails making moldings for dental devices.

- [Work] mainly consisted of performing casting and/or waxings while in the dental partials departments of several dental laboratories and sandblasting for many years beginning in 1973.

- "Douglas reported to his doctors that he was exposed to silica dust during his career in the dental manufacturing industry" and that he had been working in the industry for 42-years "with exposures to silica with grinding dentures."

In his report, the Expert also noted many articles that reported dental laboratory workers and dental technicians are exposed to higher than recommended limits of respirable silica dust.

## C. Analysis

Appellant argues that the Expert may rely on the occupational and exposure history taken by other physicians and meet the requirements of Section 90.004 or 90.010. The plain language of the statute requires that *the physician authoring the report*, *or* a medical professional under the direct supervision or control of the physician authoring the report, take the detailed occupational and exposure history from either the claimant *or* a person knowledgeable about the alleged exposure.[1] *See* Tex. Civ. Prac. & Rem. Code § 90.004(a)(1)(B). Thus, the physician authoring the report must be involved in obtaining the history required by the statute. The Expert here did not do so and instead relied solely on the histories

---

[1] Here there is no argument or contention that the other physicians that took Douglas's histories were under the Expert's direct supervision or control.

taken from other physicians he did not control or supervise.

There are other portions of this statute that allow the physician authoring the report to review the claimant's medical records and rely upon those records in creating his report. *See id.* 90.004(a)(1)(A) ("[I]f the exposed person is deceased, *reviewed available records* relating to the exposed person's medical condition." (emphasis added)). However, the language in Section 90.004(a)(1)(B) does not indicate that the physician can review available records regarding the occupational and exposure history but must, where a claimant is deceased, take "a detailed . . . history" from "a person knowledgeable about the alleged exposure or exposures." *See id*. § 90.004(a)(1)(B).

Appellant argues such an interpretation is a misapplication of the "basic rules of the English language" because the word "a" is an indefinite article and the word "the" is a definite article. However, the statute provides that the claimant must provide "a report" by "a physician" who is board certified in certain practice areas.[2] *Id*. § 90.004(a). In other words, so long as the physician is board certified (and his or her license and certification were not on inactive status at the time of the report), it is the plaintiff's choice of physician to author the expert report. *See id*. The statute then continues stating "at the time *the* report was made that"; the word "the" in this sentence refers to a specific, definite article—the report authored by the expert physician retained and statutorily qualified. Further, the statute provides that *the* report "verified that *the* physician" (1) performed a physical examination (or if deceased reviewed records); (2) took a detailed occupational and exposure history from the exposed person (or if deceased from a person knowledgeable about the exposure); and (3) took a detailed medical and smoking

---

[2] There are additional statutory requirements, such as a license and certification that are "not on inactive status at the time the report was made." Tex. Civ. Prac. & Rem. Code § 90.004(a).

7

history.  *Id*. § 90.004(a).  Again, the statute's use of the word "the" instead of "a" indicates someone specific—the expert physician retained.  In other words, once such statutorily qualified expert physician is selected, *that* physician is then responsible for meeting the remaining statutory requirements.[3]

This is not to say that the statute prevents a claimant from relying on the reports or medical records of other qualified physicians.  The statute specifically provides that the author of the report may rely on such reports and medical records when the claimant is deceased for certain, specified purposes.  *See* Tex. Civ. Prac. & Rem. Code § 90.004(a)(1)(A) ("[O]r if the exposed person is deceased, reviewed available records relating to the exposed person's medical condition.").  If the claimant is deceased, the statute also specifically allows the expert physician to take an occupational and exposure history from "a person knowledgeable about the alleged exposure . . . ."  *See id*. § 90.040(a)(1)(B), *compare* § 90.040(a)(1)(A) ("[I]f the exposed person is deceased, *reviewed available records* relating to the exposed person's medical condition." (emphasis added)).

Even assuming without deciding that appellant could rely on the medical records provided by the other doctors to piece together an occupational and exposure history, such histories in this case were not sufficiently detailed.  *See id*. § 90.040(e).  At best they indicate that Douglas worked in denture manufacturing for forty-two years in the partial denture department doing "waxing and molding."  Douglas, in his own questionnaire, stated that he was exposed to silica at one employer from 2001–2014, but no further details are provided about the alleged exposure at this employer—specifically, the frequency of the alleged exposure or

---

[3] To read it otherwise would imply that a plaintiff could choose a board-certified physician to author the report, but a family practice physician to take the detailed occupational and exposure history required.  Whether another physician who took a detailed occupational or exposure history may be considered a "person with knowledge about the alleged exposure" is not an issue that has been presented to this court.

the nature of such exposure as required by the statute. *See id.* § 90.004(e); *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 769–70 (Tex. 2007) ("Perhaps the most widely cited standard for proving causation in asbestos cases is the *Lohrmann* 'frequency, regularity, and proximity' test." (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.3d 1156 (4th Cir. 1986))).

Appellant alleges that "dental technician exposure to respirable crystalline silica include mixing powders, removing castings from molds, and grinding and polishing castings and porcelain," yet, from the occupation and exposure history taken from Douglas, he states that he: (1) was exposed to silica from denture grinding, (2) made moldings, (3) performed "casting and/or waxings," (4) sandblasted for "many" years beginning in 1973, and (5) was in the same building where grinding of silicates occurred. There is no indication of the nature, duration, or frequency he was alleged to have been exposed to respirable silica particles. In his history there is no indication of whether Douglas's exposure to respirable silica particles occurred daily, weekly, monthly, or bi-monthly to satisfy the frequency of exposure requirement. There is no indication of whether he was exposed directly through his own work or through the work of others somewhere else in the building to satisfy the nature of exposure requirement. *See In re GlobalSantaFe Corp.*, 275 S.W.3d at 487–88 n.71 ("In the absence of an appropriate work/exposure history, there is no way for the diagnosing doctors to have known the potential intensities of the respirable silica exposure, the duration of the exposure, information as to dosage . . . ." (quoting *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 622, 624–25 (S.D. Tex. 2005))); *see also Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F. Supp. 3d 556, 564 (E.D. La. 2015) ("[A] qualitative evaluation of the exposures to asbestosis, i.e., the level, frequency, nature, proximity, and duration of the exposures at issue, can sufficiently prove

causation"; and an expert's opinion that "all exposures" to asbestosis were causative was insufficient); *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 168 So. 3d 556, 569 (La. Ct. App. 2014) (in asbestos related-injury litigation, "proper to evaluate or consider a number of different factors including, but not limited to the nature of the exposure, the level of exposure, and the duration of exposure, whether a product gives off respirable asbestos fibers, whether the person was close or far from the source of fiber release, how frequently the exposure took place, whether respiratory protection was used, the chemistry and physics of the asbestos fibers, the pathophysiology of breathing, the movement of asbestos fibers in the lung, and the molecular pathology of tumor development, all of which the testimony established was part of the methodology followed").[4]  By stating that Douglas has worked in this field for forty-two years, it seems appellant wishes the court to infer that Douglas was exposed over his entire forty-two-year career. However, Douglas does not state that he has been exposed his entire career, or even the nature or frequency of any alleged exposure over his entire career. Instead, Douglas only lists one workplace where he alleged exposure to silica from 2001–2014.  As a result, even if the Expert could rely upon the histories taken by the other physicians, the report in this case fails to "describe . . . the nature, duration, and frequency of the exposed person's exposure to the airborne contaminants."  Tex. Civ. Prac. & Rem. Code § 90.004(e); *see also Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 339 (Tex. 2015) (in mesothelioma case, proof of "some" or "any" exposure is insufficient to establish causation); *Borg-*

_____

[4] We do not hold that to survive a motion to dismiss under Chapter 90 that the expert report must meet the causation standard required to win at trial. The MDL Court provides that a Chapter 90 motion to dismiss and a "Robinson/Havner" challenge are separate matters and we agree.  However, we find such cases helpful to illustrate a "detailed" occupational and exposure history and that such requirements are not new or novel requirements in silica or asbestosis cases.

*Warner,*, 232 S.W.3d at 773 (concluding in asbestos injury case that to prove causation, "Defendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease, will suffice. As one commentator notes, [i]t is not adequate to simply establish that 'some' exposure occurred. Because most chemically induced adverse health effects clearly demonstrate 'thresholds,' there must be reasonable evidence that the exposure was of sufficient magnitude to exceed the threshold before a likelihood of 'causation' can be inferred." (quotation omitted)).

Appellant argues that the diagnosis of the various board-certified doctors cannot be legitimately questioned because of the pathology report from Douglas's lung tissue. However appellant points to no statutory provision that excuses appellant from providing a detailed occupational and exposure history so long as there is a pathology report confirming silicosis or even nine board-certified doctors diagnosing silicosis. The statute has two methods of compliance—Sections 90.004 and 90.010. *See* Tex. Prac. & Rem. Code §§ 90.004, 90.010(f)(1); *see also Union Carbide Corp.*, 438 S.W.3d at 51–52. Both Sections 90.004 and 90.010(f)(1) require a "detailed occupational and exposure history" from either the claimant or someone with knowledge regarding the alleged exposure. *See* Tex. Prac. & Rem. Code §§ 90.004, 90.010(f)(1); *Union Carbide Corp.*, 438 S.W.3d at 51–52.

Appellant argues that "discussions of job time periods (weekly, daily, etc.) offers no helpful information" for Douglas's diagnosis or any "greater indica of reliability" to the diagnosis in this case and that if "the diagnosing doctors thought this information was important, they would have asked." The statute requires "nature, duration, and frequency" regardless of whether appellant believes that it is helpful in this specific situation. *See In re GlobalSantaFe Corp.*, 275 S.W.3d at

487–88 n.70, n.71 ("A diagnosis [of silicosis] requires (1) an adequate exposure to silica dust with a appropriate latency period, (2) radiographic evidence of silicosis, and (3) the absence of any good reason to believe that the radiographic findings are the result of some other condition . . . . [T]hese three criteria are universally accepted. In the absence of an appropriate work/exposure history, there is no way for the diagnosing doctors to have known the potential intensities of the respirable silica exposure, the duration of the exposure, information as to dosage . . . ." (quoting *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 622, 624–25 (S.D. Tex. 2005))).

In *Union Carbide*, the Supreme Court of Texas concluded that by retaining certain tests in the "safety valve" provision of Chapter 90, the Legislature singled out such considerations as required to be made and considered in reaching medical conclusions and were not "merely an inconsequential procedural hurdle." *Union Carbide Corp.*, 438 S.W.3d at 53 (considering pulmonary functioning testing as part of required expert report in the safety valve provision of Chapter 90). A "detailed medical, occupation, and exposure history" is one of these considerations because "the reporting physician must rule out causes of functional impairment other than" silicosis exposure. *See id.* Again, as indicated above, appellant identifies no statutory exception for the requirement that the claimant provide a detailed occupational and exposure history.

For these reasons, we cannot conclude that the trial court abused its discretion in determining that the expert report failed to comply with either Section 90.004 or 90.010(f). We overrule appellant's issues five and six.[5]

---

[5] Appellant's issues one, two, and three all deal with whether the expert report complied with the statute. Even if we concluded that appellant's report complied under his issues one, two, and three, because we conclude that the trial court did not abuse its discretion in concluding that the expert report failed to provide a detailed occupational and exposure history, we would

12

### III. OPEN COURTS GUARANTEE

Appellant next argues that Sections 90.004 and 90.010 violate the open courts guarantee under Article I, § 13 of the Texas Constitution. Appellant argues that silicosis claims "have a long history in common law" in Texas and that the constitution guarantees that a person who brings a "well-established common law cause of action will not suffer unreasonable or arbitrary denial of access to the courts."

"We begin . . . by presuming that the statute is constitutional." *Union Carbide Corp.*, 438 S.W.3d at 55. The party challenging the constitutionality of a statute has the burden of proving it. *Id.* Article I, section 13 guarantees that "[a]ll courts shall be open, and every person for any injury done him . . . shall have remedy by due course of law." Tex. Const. art. I, § 13. "For this provision to apply, however, the litigant must: (1) have a cognizable common-law cause of action that is being restricted; and (2) show that the restriction is unreasonable or arbitrary when balanced against the statute's purpose." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 902–903 (Tex. 2000). Thus, we must first determine whether the claims asserted are "cognizable as a common-law claim." *See id.* at 903.

"[A]ll negligence actions are common-law claims." *Id.* However, at common law, "no personal injury cause of action survived a victim's death." *Id.* Any heirs of the victim could not sue on the victim's behalf or for their own losses as a result of the tortious act. *Id.* Absent legislative enactment, wrongful death and survival actions would not exist and are, therefore, statutory instead of derived from common law. *Id.*

---

arrive at the same result. Therefore, we do not address them because they are unnecessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1.

Here, because the victim, Douglas, is deceased, the claims asserted are only available through statute and are, thus, not "cognizable" common law claims. *See id.*; *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 845 (Tex. 1990) ("Like all actions based upon theories of negligence, the [plaintiffs'] cause of action was a common law claim. It would have died with [the victim] had it not been preserved by the legislature in the wrongful death statute."); *see also* Tex. Civ. Prac. & Rem. Code § 71.002, 71.004 (providing for cause of action to an individual's surviving spouse, children, and parents for actual damages arising from an injury that results in the individual's death).

We overrule appellant's final issue.

## IV.  CONCLUSION

For the reasons stated above, we cannot conclude that the trial court abused its discretion in determining that appellant failed to provide a statutorily compliant expert report.  We further conclude that appellant has failed to establish a violation of the open courts guarantee within the Texas Constitution.  We affirm the judgment of the trial court.

/s/     Ken Wise
Justice

Panel consists of Justices Wise, Spain, and Hassan. (Spain, J., dissenting and Hassan, J., concurring without opinion).