OPINION


No. 04-08-00725-CV


HEARST NEWSPAPER PARTNERSHIP, L.P., 

d/b/a San Antonio Express-News and Ron Wilson,

Appellants


v.


Manuel MACIAS, Jr.,

Appellee


From the 57th Judicial District Court, Bexar County, Texas

Trial Court No. 2007-CI-00690

Honorable Joe F. Brown, Jr., Judge Presiding



Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Catherine Stone, Chief Justice

 Sandee Bryan Marion, Justice

 Rebecca Simmons, Justice


Delivered and Filed: February 18, 2009


AFFIRMED IN PART; REVERSED AND RENDERED IN PART



 In the underlying lawsuit, Manuel Macias, Jr. sued the Hearst Newspaper Partnership, L.P., 

d/b/a San Antonio Express-News, and Ron Wilson (collectively, "the newspaper"), as well as other
defendants. Macias's suit against the newspaper alleged defamation based on eight statements
contained in articles written by Ron Wilson for the San Antonio Express-News. The newspaper
moved for summary judgment on all eight statements. The trial court rendered summary judgment
in favor of the newspaper on four of the statements and denied the newspaper's motion as to the
other four statements. This interlocutory appeal by the newspaper ensued. (1) Because we conclude
the newspaper established the substantial truth of its articles, we reverse and render judgment in
favor of the newspaper.

BACKGROUND

 Macias is the former Executive Director of the San Antonio Development Agency ("SADA")
and San Antonio Affordable Housing, Inc. (SAAH"), which is a non-profit community housing
organization created by SADA. Diane Gonzalez-Cibrian was SADA's chairwoman and a member
of the SAAH board of commissioners. In 2006, a dispute arose between Macias and Gonzalez-Cibrian over SADA and SAAH projects. On September 12, 2006, Macias was, as he alleges in his
third amended petition, "constructively terminated" from his position as Executive Director of
SADA. The newspaper ran several articles about the dispute and Macias's departure. Macias sued
the newspaper alleging it defamed him.

 In the course of the underlying litigation, the newspaper moved for summary judgment on
Macias's claims against it. The trial court rendered summary judgment in part in favor the
newspaper, but denied the newspaper's summary judgment motion with regard to statements
contained in four of Ron Wilson's articles for the Express-News. On appeal, the newspaper argues
the trial court erred in denying its summary judgment motion because the challenged statements were
substantially true, were protected by fair-report and fair-comment privileges, and were not published
with actual malice. Because we conclude the newspaper carried its summary judgment burden of
establishing the substantial truth of the challenged statements, we discuss only that basis for
summary judgment.

DISCUSSION

 Libel is a defamatory statement in written form that tends to injure a living person's
reputation and, as a result, exposes the person to public hatred, contempt or ridicule, or financial
injury. See Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2005). However, "[t]he truth of
the statement in the publication on which the action for libel is based is a defense to the action." Id.
§ 73.005. In a summary judgment proceeding involving a media defendant in which First
Amendment protections are applicable, a showing by the defendant-movant of the publication's
substantial truth will defeat the non-movant's causes of action. See McIlvain v. Jacobs, 794 S.W.2d
14, 15 (Tex. 1990); San Antonio Express News v. Dracos, 922 S.W.2d 242, 249 (Tex. App.--San
Antonio 1996, no writ).

 The test used in determining whether a publication is substantially true involves considering
whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the
mind of the average reader or listener, than a truthful statement would have been. McIlvain, 794
S.W.2d at 16. Such an evaluation involves looking to the "gist" of the publication. Id. If the
underlying facts as to the gist of the defamatory charge are undisputed, then we may disregard any
variance regarding items of secondary importance and determine substantial truth as a matter of law. 
Id.

A. Statement That Macias "Resigned"

 In his third amended petition, Macias takes issue with the newspaper's statement, in three
of the articles, that he "resigned." According to Macias, this statement was false because he did not
resign; instead, he was "constructively terminated." However, in his petition, Macias states
Gonzalez-Cibrian demanded that he "execute a letter of resignation immediately." Macias then
states: "The Plaintiff, an at-will employee, was induced to tender his hand-written letter of
resignation during the executive session, after [he] was promised that he would continue to receive
salary and full benefits until October 31, 2006, which was the effective date of his resignation. On
September 12, 2006, the Plaintiff tendered his hand-written resignation with an effective date of
October 31, 2006 . . . ." In his summary judgment affidavit, Macias admitted he was given the
option of resigning immediately or being terminated as Executive Director, and "[t]o avoid being
fired, I agreed to resign that day."

 Because there is no dispute that Macias wrote what he himself characterized as a letter of
resignation, we conclude the newspaper's statement that he resigned was substantially true. Also,
the statement that he resigned "does not charge [Macias] with the commission of a crime or the
violation of any law[, nor does it] accuse him of violating any kind of contract . . . . [B]y no stretch
of the imagination does it charge him with any unethical acts and business dealings. It accuses him
of absolutely nothing except what he had a right to do . . . ." Musser v. Smith Protective Serv., Inc.,
723 S.W.2d 653, 655 (Tex. 1987) (internal citation omitted). Therefore, we conclude that, in the
mind of the average reader, the statement that Macias resigned was no more damaging to his
reputation than a statement that he was constructively terminated.

B. Internal Audits and FBI Investigation

 Macias also takes issue with the following statements contained in three of the articles that
he resigned in the wake of audits and an FBI investigation: 


Contained in an October 4, 2006 newspaper article: 


 Last month, SADA Executive Director Manuel "Manny" Macias Jr.
resigned in the midst of ongoing audits by SADA and the city.


Contained in an October 6, 2006 newspaper article:


 Macias, SADA's executive director, resigned Sept. 12 after city
officials began questioning the use of federal funds on his watch.


Posted to the newspaper's website on December 7, 2006:


 Manny Macias, SADA's former executive director, resigned Sept. 12
in the wake of an independent audit of his credit card use, a second
audit of whether SADA used federal housing funds appropriately, and
the city's plan to defund the embattled agency, whose housing
contracts are being investigated by the FBI.


 The "gist" of the October 4, 2006 article was that the SADA board was attempting to reassert
control over SAAH and was demanding the return of $10,000 withdrawn from the SADA bank
account, as well as the return of various financial documents, including credit card records, withheld
by SAAH from a special audit. The article explained that auditors "were looking at a number of
financial records, including use of SAAH's credit cards by Macias . . . ." The article also mentioned
that Southwest Housing, a Dallas developer involved in a SAAH project, was under investigation
by the FBI. 

 The "gist" of the October 6, 2006 article concerned the FBI investigation, the internal audit,
and the SADA board's continued attempt to obtain missing financial records. The article again
stated that one of the issues to be addressed by the audit was Macias's possible misuse of credit
cards. The newspaper reported that Gonzalez-Cibrian said SADA was "particularly interested in
documents related to a $20 million apartment complex [SAAH] was building in partnership with
Southwest Housing, a Dallas developer under investigation by the FBI in connection with contracts
in that city." The article quoted FBI Special Agent Eric Vasay as confirming "an ongoing
investigation regarding contracts with SADA and outside entities." The article reported the San
Antonio Deputy City Manager as stating the SADA board was informed that "the city believes any
money [SAAH] has belongs to SADA and to the city, which administers federal funds that fund
SADA." The article also discussed potential tampering with a computer belonging to SADA's
"former executive director." Finally, the article stated Macias returned a call requesting an
interview, but he could not be reached later the same day.

 The "gist" of the December 7, 2006 article was that the SADA computer had been tampered
with and that Macias had refused to turn over financial records. The article reported that Macias said
he did not know what happened to the computer, it worked fine on his last day, and office computers
frequently broke down. The article noted that records from the computer likely would have been
reviewed in the course of two audits, "one dealing with financial management of the agency and the
other with whether SADA properly used and reported federal housing funds administered by the
city." The article reported that Gonzalez-Cibrian "pushed for an independent audit of management
finances and Macias' use of credit cards," after an SADA employee sent board members a letter
claiming the agency was being mismanaged.

 In its summary judgment motion, the newspaper proved the truth of the facts alleged in these
three articles. The newspaper submitted, as summary judgment proof, Agent Vasay's affidavit in
which he confirmed "an ongoing investigation regarding contracts with SADA and outside entities." 
The newspaper's summary judgment evidence also included a copy of (1) a May 31, 2006
independent audit report that discussed, in part, an analysis of travel expenses and credit card usage;
and (2) SADA's application for a temporary restraining order, which stated "the City notified SADA
and SAAH that the City was conducting a comprehensive financial audit of SADA, and that the
City's audit request included review of all of SAAH's financial and accounting records." Also, in
Macias's summary judgment response, Macias admits an independent audit was conducted and
consisted of a review of SAAH's credit card and travel policies, and credit card receipts and travel
expenses. As a result, we conclude the newspaper's statements in its articles that Macias resigned
in the wake of audits and an FBI investigation were substantially true.

C. Airfare and Credit Card Charges

 Finally, Macias complains of the following statement in a September 6, 2006 article: "City
records show that he charged $400 for airfare for his family and failed to document $1,000 in
lunches." The "gist" of this article was that the San Antonio City Council was attempting to dissolve
SADA for, in part, various perceived inefficiencies. The article stated, "After an April complaint by
a retiring employee, [Macias] was placed under scrutiny for allegedly misusing agency credit cards. 
City records show that he charged $400 for airfare for his family and failed to document $1,000 in
lunches." In its summary judgment motion, the newspaper proved the truth of the facts alleged in
the September 6 article. The newspaper's summary judgment evidence included a copy of an
independent audit report that stated its analysis of travel expenses and credit card usage revealed a
$410.90 charge for airfare for Macias's wife and "various [SADA credit card] charges in the amount
of $999.81 . . . for out-of-town meals," despite a travel per diem of only $51 per day for meals. The
audit stated "[b]oth per diem allowances and meal charges while on travel status should not be
allowed." As a result, the newspaper's statement in its September 6, 2008 article was substantially
true. Also, we note that the article reported allegations contained within "City records." "When, as
here, a case involves media defendants, the defendants need only prove that third party allegations
reported in a broadcast were, in fact, made and under investigation; they need not demonstrate the
allegations themselves are substantially true." Dolcefino v. Randolph, 19 S.W.3d 906, 918 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied).

D. Macias's Response to the Motion for Summary Judgment (2)

 In his response to the newspaper's summary judgment motion, Macias argued the gist of the
articles was libelous because none of the articles mentioned an independent audit performed by
Steven Porter, which exonerated Macias of any wrongdoing. Macias argued that the articles were
not substantially true because they included only negative allegations and did not include any
positive statements about him. As summary judgment proof, Macias submitted the affidavit of
Steven Porter, whose firm conducted an audit "of limited scope" of the SAAH credit card and travel
policies and travel expenses. In his affidavit, Porter states Macias properly accounted for all funds
in question and discharged his duties without any indication of wrongdoing. However, a copy of the
audit report was not attached to Macias's response and there is no indication in the summary
judgment record that a copy of the report was available to the newspaper. 

 Macias's argument that the articles as a whole are defamatory is based on the theory that "the
omission of material facts or misleading presentation of true facts . . . can render an account just as
false as an outright misstatement." See Turner v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex.
2000). However, "a plaintiff claiming defamation based on a publication as a whole must prove that
the publication's 'gist' is false and defamatory and that the publication is not otherwise privileged." 
Id. We conclude that even if the Porter audit was available to the newspaper and had actually been
quoted in the articles, the "gist" of the four articles would remain unchanged: Macias submitted a
letter of resignation, audits were conducted into his credit card usage, and the FBI was conducting
its own investigation of SAAH contacts. CONCLUSION

 We reverse that portion of the trial court's judgment denying the newspaper's motion for
summary judgment and render a take-nothing summary judgment in favor of the newspaper with
respect to Macias's libel claim. The judgment is affirmed in all other respects.


 Sandee Bryan Marion, Justice

1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6) (Vernon 2008).
2. Macias did not file an appellee's brief in this appeal.