**Affirmed and Majority and Dissenting Opinions filed July 19, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00815-CV

## THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant

### V.

## RONALD K. ONEY, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DANIEL D. ONEY, Appellee

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2011-32031**

## M A J O R I T Y   O P I N I O N

Appellee, Ronald K. Oney, Individually and as Representative of the Estate of Daniel D. Oney, brought a claim under the Federal Employers' Liability Act ("FELA") against The Kansas City Southern Railway Company ("KCSR"). KCSR filed a motion to dismiss based on appellee's failure to serve medical reports under Chapter 90 of the

Texas Civil Practice and Remedies Code.[1]  The multidistrict litigation ("MDL") court handling pretrial issues in this case denied KCSR's motion, determining appellee is not required to comply with Chapter 90 report requirements.  In a single issue, KCSR contends the trial court erred by denying the motion to dismiss.  We affirm.

## I.  BACKGROUND

On March 14, 2011, appellee filed his original petition, alleging the following facts.  From 1971 until 1994, Daniel D. Oney ("the decedent") was employed by KCSR, a railroad engaged in interstate commerce.  During this employment, the decedent "was exposed to harmful and/or hazardous substances, including known human carcinogens, such as asbestos, silica, and diesel exhaust."  As a result of this exposure, the decedent was diagnosed with lung cancer in April 2010 and died approximately one month later.  Appellee asserted a claim under FELA because of KCSR's involvement in interstate railroad commerce.[2]

KCSR answered appellee's suit and filed a motion to transfer the case to the asbestos MDL pretrial court.   According to KCSR, its answer triggered a thirty-day deadline for the claimant to furnish medical reports under Chapter 90.  Succinctly, sections 90.003 and 90.004, respectively, require a claimant alleging asbestos-related and silica-related injuries to serve reports in which a qualified physician verifies that the person alleged to have been exposed to asbestos or silica has been diagnosed with an injury caused by that exposure.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 90.003, 90.004.  It is undisputed appellee did not timely serve reports to KCSR.  Pursuant to section 90.007, KCSR filed a motion to dismiss appellee's asbestos-related and silica-related claims based on appellee's failure to serve the reports required under Chapter 90.  *See id.* § 90.007 (providing procedure for motion to dismiss).  As discussed in more detail below, the filing of a section 90.007 motion to dismiss stays all proceedings until the

---

[1] *See generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 90.001–90.012 (West 2011).

[2] Appellee later filed an amended petition, alleging the same facts and claim.

2

motion is resolved by the court. *Id.* § 90.007(d). Appellee responded to the motion by contending Chapter 90 report requirements and dismissal provision are preempted by FELA.

On August 15, 2011, appellee filed an agreed motion to compel discovery from the hospital maintaining the decedent's pathology. On August 17, 2011, appellee filed a supplemental response to KCSR's motion to dismiss, arguing that "discovery in this case is in its infancy" and his experts needed an opportunity to review pathology evidence before providing reports. On August 26, 2011, the MDL court signed an order compelling the hospital to provide the requested pathology evidence. On the same date, the trial court also signed an order denying KCSR's motion to dismiss, expressly concluding that appellee is not required to comply with Chapter 90 report requirements.

## II. JURISDICTION

As an initial matter, appellee contends we lack jurisdiction to consider this interlocutory appeal. Generally, a party may appeal only a final judgment. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). However, a party may appeal an interlocutory order in which the trial court denies a motion to dismiss filed under section 90.007. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(11) (West Supp. 2011).

Apparently, appellee argues section 51.014(a)(11) does not apply because Chapter 90 is preempted by FELA. Thus, according to appellee, KCSR's motion to dismiss was, in actuality, a motion to dismiss under FELA, not section 90.007. We disagree. In its motion to dismiss, KCSR specifically requested dismissal pursuant to section 90.007. Because the Texas Legislature has authorized interlocutory appeals from a trial court's denial of a section 90.007 motion to dismiss, we have jurisdiction to consider this appeal.[3]

---

[3] Nevertheless, we agree with appellee that this appeal in no way pertains to or affects his claims based on the decedent's exposure to diesel exhaust.

3

## III. FEDERAL PREEMPTION

In a single issue, KCSR contends the trial court erred by denying KCSR's motion to dismiss and concluding that appellee is not required to comply with Chapter 90 report requirements because they are preempted by FELA.

### A. Conflict Preemption

Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2; *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 481 (Tex. 2010). Although there are several species of preemption, we are concerned with that type of "conflict preemption" under which state law is preempted when it stands as an obstacle to the accomplishment and execution of congressional objectives. *See Hinton*, 329 S.W.3d at 482. Whether substantive or procedural, state law is preempted when it interferes with or restricts remedies under a federal statute. *See Felder v. Casey*, 487 U.S. 131, 138 (1988). "[W]here state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" *Id.* (quoting *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296 (1949)). The relative importance to the state of its own law is immaterial when there is a conflict with a valid federal law because any state law, however clearly within a state's acknowledged power, which interferes with or is contrary to federal law must yield. *Free v. Bland*, 369 U.S. 663, 666 (1962). State procedural rules may not be used to impose unnecessary burdens upon rights of recovery authorized by federal law. *See Brown*, 338 U.S. at 298.

### B. Federal Employers' Liability Act (FELA)

"Before FELA was enacted, the harsh and technical rules of state common law had made recovery difficult or even impossible for injured railroad workers." *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2638 (2011) (citation omitted). "[D]issatisfied with the

[railroad's] common-law duty, Congress sought to supplan[t] that duty with [FELA's] far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." *Id.* (citations omitted). FELA was enacted to "shif[t] part of the human overhead of doing business from employees to their employers." *Id.* at 2636 (citations omitted).

Under FELA,

Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

45 U.S.C.A. § 51. FELA affords claimants the right to have causation of their injuries determined by the simple test of whether the injuries resulted "in whole or in part" from the carrier's negligence, which is far less burdensome than the usual proximate-cause test applied in common-law negligence cases. *Dutton v. S. Pac. Transp.*, 576 S.W.2d 782, 784 (Tex. 1978). Additionally, "In order to further FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers," such as the fellow-servant rule, contributory negligence, and assumption-of-the-risk doctrine. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43 (1994). "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U.S.C.A. § 55. Federal and state courts have concurrent jurisdiction under FELA. 45 U.S.C.A. § 56.

"It is now well-settled that Congress explicitly directed that FELA wholly preempt state-law remedies for railway employees injured in the course of employment when any part of that employment furthers interstate commerce." *Rogers v. Consol. Rail Corp.*, 948 F.2d 858, 860 (2d Cir. 1991). "As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is

5

federal." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985); *see also Houghton v. Port Terminal R.R. Ass'n*, 999 S.W.2d 39, 43 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Substantive rights governed by FELA cannot be interfered with, lessened, or destroyed by a state rule of practice or procedure. *Scott v. Atchison, T. & S. F. R. Co.*, 572 S.W.2d 273, 281 (Tex. 1978) (op. on rehearing) (citing *Arnold v. Panhandle & Santa Fe Ry. Co.*, 353 U.S. 360, 360–61 (1957) (per curiam)).

## C. Texas Civil Practice and Remedies Code Chapter 90: Claims Involving Asbestos and Silica

In 2005, Chapter 90 was signed into law, establishing the method for handling a pretrial docket for asbestos-related and silica-related claims and prescribing reporting requirements and medical criteria by which impaired and unimpaired claimants are identified. *See* Acts 2005, 79th Leg., R.S., ch. 97, § 1–2, 2005 Tex. Gen. Laws 169, 169–79. In passing Chapter 90, the Legislature stressed the existence of an "asbestos-litigation crisis," noting that Texas led the nation in such suits during the period from 1988 to 2000. Tex. Civ. Prac. & Rem. Code Ann. § 90.001 cmts. (d)–(e). The Legislature found that the crisis was due in part to claimants, who had occupational exposure to asbestos but did not yet suffer impairment from the exposure, filing suits to avoid statute-of-limitations issues. *Id.* § 90.001 cmt. (f). The Legislature recognized that the deluge of asbestos litigation resulted in the bankruptcies of many companies, the loss of tens of thousands of jobs, massive litigation expenses, and overcrowded dockets that severely hampered the ability of seriously ill claimants to seek redress. *Id.* § 90.001 cmts. (g)–(h). For similar reasons, the Legislature found a silica-litigation crisis was imminent. *Id.* § 90.001 cmts. (i)–(m); *see generally* John G. George, *Sandbagging Closed Texas Courtrooms with Senate Bill 15: The Texas Legislature's Attempt to Control Frivolous Silica Claims Without Restricting the Constitutional Rights of Silicosis Sufferers*, 37 St. Mary's L.J. 849, 855–65 (2006) (discussing problems with silica-related litigation and Legislature's enactment of Chapter 90).

Consequently, the Legislature enacted Chapter 90, commenting:

> It is the purpose of this Act to protect the right of people with impairing asbestos-related and silica-related injuries to pursue their claims for compensation in a fair and efficient manner through the Texas court system, while at the same time preventing scarce judicial and litigant resources from being misdirected by the claims of individuals who have been exposed to asbestos or silica but have no functional or physical impairment from asbestos-related or silica-related disease.

*Id.* § 90.001 cmt. (n). To that end, Chapter 90 requires a claimant to demonstrate early in the pretrial phase of litigation that his asbestos-related or silica-related injuries have been substantiated by a reliable medical-expert evaluation. Under sections 90.003 and 90.004, respectively, a claimant must serve on each defendant a report in which a board-certified physician details certain information regarding the diagnostics performed and the injured person's exposure history and verifies that the injured person suffers from an asbestos-related or silica-related impairment. *Id.* §§ 90.003, 90.004. The claimant must serve the report on the defendant not later than the thirtieth day after the defendant answers or enters an appearance in the action. *Id.* § 90.006(a).[4] Section 90.007 is entitled "Motion to Dismiss" and provides in relevant part,

> (a) In an action filed on or after the date this chapter becomes law, if a claimant fails to timely serve a report on a defendant, or serves on the defendant a report that does not comply with the requirements of Section 90.003 or 90.004, the defendant may file a motion to dismiss the claimant's asbestos-related claims or silica-related claims. The motion must be filed on or before the 30th day after the date the report is served on the defendant. If a claimant fails to serve a report on the defendant, the motion must be filed on or before the 30th day after the date the report was required to be served on the defendant under Section 90.006. If the basis of the motion is that the claimant has served on the defendant a report that does not comply with Section 90.003 or 90.004, the motion must include the reasons why the report does not comply with that section.
>
> . . .

---

[4] However, as discussed more fully below, different report deadlines and procedures applied to actions pending on the date Chapter 90 became effective. *See* Tex. Civ. Prac. & Rem. Code Ann. § 90.006(b), (c).

(c) Except as provided by Section 90.010(d) or (e),[5] if the court is of the opinion that a motion to dismiss is meritorious, the court shall, by written order, grant the motion and dismiss all of the claimant's asbestos-related claims or silica-related claims, as appropriate, against the defendant. A dismissal under this section is without prejudice to the claimant's right, if any, to assert claims for an asbestos-related injury or a silica-related injury in a subsequent action.

*Id.* § 90.007(a), (c).

## D. Analysis

### 1. *In re GlobalSantaFe*

In support of its argument that the medical-report requirements of Chapter 90 are not preempted by FELA, KCSR relies primarily on *In re GlobalSantaFe Corp.* 275 S.W.3d 477 (Tex. 2008) (orig. proceeding).

In *In re GlobalSantaFe*, the plaintiff filed suit against GlobalSantaFe Corp. ("GSF") in Texas district court, asserting Jones Act claims for maritime injuries allegedly stemming from occupational exposure to silica. *Id.* at 479–80. While the case was still in the pretrial phase, Chapter 90 of the Texas Civil Practice and Remedies Act became effective. *Id.* at 480. Because the plaintiff filed his suit before September 1, 2003, the dismissal provisions of section 90.007 were inapplicable. *Id.* at 481 (citing Tex. Civ. Prac. & Rem. Code Ann. § 90.007(a)). Nevertheless, the plaintiff had ninety days to serve a report complying with Chapter 90 requirements, or the defendant could file a notice of transfer, automatically transferring the case to the MDL court until a report was served. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 90.010(a)(2), (b)). GSF filed a notice of transfer, contending the plaintiff failed to timely serve a Chapter 90 report. *Id.*

---

[5] Section 90.010(d) is inapplicable in the present case because it applies only to those actions pending on September 1, 2005, when Chapter 90 became effective. Section 90.010(e) may be invoked in actions filed on or after the effective date of Chapter 90 and, in conjunction with section 90.010(f)–(j), provides claimants with alternative expert-report requirements and procedures to those espoused in sections 90.003 and 90.004. Nonetheless, appellee did not invoke, and does not argue, that section 90.010 (e)–(j) applies. Accordingly, we do not consider the effect of section 90.010(e)–(j) in our preemption analysis.

8

at 482. After the case was transferred to the MDL court, the plaintiff argued Chapter 90 was preempted in its entirety by the Jones Act. *Id.* The MDL court agreed and remanded the case to district court. *Id.* at 482, 484. GSF petitioned for a writ of mandamus in this court; we agreed Chapter 90 was preempted. *In re GlobalSantaFe Corp.*, 292 S.W.3d 68 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding), *mand. granted*, 275 S.W.3d 477 (Tex. 2008). GSF then sought mandamus relief from the Supreme Court of Texas.

The supreme court considered the applicability of Chapter 90 relative only to silica claims; the court noted it expressed no opinion relative to Chapter 90 provisions applying to asbestos-related claims. *In re GlobalSantaFe*, 275 S.W.3d at 489 n.78. The court recognized that the Jones Act is remedial, meaning "for the benefit and protection of seamen who are particularly wards of admiralty," and discussed Jones Act preemption principles:

> The preemption of state law by the Jones Act is a unique corner of federal preemption law that must be applied with recognition that Jones Act cases can be brought in federal or state court. While state law must sometimes yield to the need for a uniform and harmonious system of federal maritime law, "this limitation still leaves the States a wide scope." Congress could preempt the entire field of maritime law, but has instead left the states "with a considerable legislative and judicial competence in the maritime field." Where Congress has acted in the admiralty area, "state regulation is permissible, absent a clear conflict with the federal law."

*Id.* at 484 (citations omitted). The court then recognized general principles regarding preemption under the Jones Act:

> On the one hand, *substantive* rights created by Congress via the Jones Act must prevail over inconsistent state substantive law even where the suit is brought in state court. On the other hand, it has held that state law characterized as *procedural* is not preempted. The [United States Supreme] Court has also recognized that federal maritime law follows a "reverse *Erie*" doctrine of sorts, employing the use of substantive federal maritime law in state courts but recognizing that state procedural law can be followed.

*Id.* at 485 (citations omitted). The court cited a United States Supreme Court case supporting this proposition. *Id.* at 486 (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443

9

(1994) (holding state statute rendering federal doctrine of *forum non conveniens* inapplicable was procedural and thus not preempted)).

The court then considered whether certain portions of Chapter 90 were preempted by the Jones Act. First, the court held that most of the report requirements of section 90.004 were not preempted: "Nothing in the Jones Act exempts a seaman claiming a silica-related disease from establishing, through reliable medical proof, that he in fact suffers from such a disease. . . . Both federal and state law require expert testimony grounded in the methods and procedures of science." *Id.* at 486–87. "To the extent that Jones Act jurisprudence recognizes a special standard for proving causation, federal cases have held that this causation standard does not exempt Jones Act cases from the general rules for admission of expert testimony." *Id.* at 487. The court then specified which requirements in section 90.004 are related to assuring reliable expert confirmation of the existence of silica diseases. *Id.* at 487–88. "All of these requirements represent the [Texas] Legislature's attempt to require a medically valid demonstration of silica-related disease as opposed to mere exposure to silica or some other substance or mere concern that a disease may develop in the future." *Id.* at 488.

Second, the court held that Chapter 90 procedures for transferring silica cases to an MDL court for pretrial proceedings are not preempted by the Jones Act because it is merely state procedural law. *Id.* at 488–89.[6] "These provisions serve an important state purpose . . . of streamlining the resolution of silica cases . . . and thus conserving judicial and litigant resources." *Id.* at 488. "Texas courts are not expected to abandon all their regular rules of practice and procedure and to adopt federal rules in a case simply because a Jones Act claim is alleged. On the contrary, maritime law recognizes a 'reverse-*Erie*' principal that generally leaves state courts hearing maritime suits to their regular procedures." *Id.* at 489. "The transfer of silica-related cases to an MDL court for

---

[6] In the present case, neither party argues the case was improperly transferred to the MDL court.

10

consolidated pretrial proceedings does not work material prejudice to a characteristic feature of maritime law." *Id.*

Third, the court held that one portion of the report requirements in section 90.004 was preempted: the requirement that an expert must verify the exposed person has "at least Class 2 or higher impairment" due to silicosis. *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 90.004(b)(2)). This "minimal-impairment provision" was preempted because the Jones Act imposes no minimal threshold of injury. *Id.* "Chapter 90 must not be interpreted to impose a higher standard of proof for causation than the federal standard applicable to Jones Act cases." *Id.* The diminished causation standard under the Jones Act is whether "employer negligence played any part, even the slightest, in producing the injury." *Id.* at 489 n.79 (citation omitted). Finally, the court determined that preemption of one portion of Chapter 90 did not necessitate preemption of the remaining provisions. *Id.* at 490.

### 2. Application of *In re GlobalSantaFe* in Present Suit

Appellee argues the instant case differs significantly from *In re GlobalSantaFe* because, *inter alia*, section 90.007, pertaining to motions to dismiss for failure to serve a Chapter 90 report, was not applicable in that case. 275 S.W.3d at 481. We agree .

In *In re GlobalSantaFe*, the plaintiff's failure to timely serve a report merely resulted in the MDL court retaining jurisdiction until a satisfactory report was served, and nothing in Chapter 90 mandated a stay in discovery while the plaintiff attempted to prepare a report; the defendant could not file a motion to dismiss based on the plaintiff's failure to file a report. *Id.* Thus, under the circumstances in *In re GlobalSantaFe*, the plaintiff had an opportunity to conduct discovery and obtain the information needed to satisfy the report requirements.

Conversely, in the instant case, a defendant may file a section 90.007 motion to dismiss when the claimant fails to serve a sufficient medical report. Tex. Civ. Prac. & Rem. Code Ann. § 90.007(a). Importantly, although the trial court has discretion to

11

extend or shorten deadlines for filing the motion to dismiss and response, all proceedings are stayed upon filing of the motion to dismiss, precluding the claimant from conducting additional discovery. *Id.* § 90.007(d), (e); *see also Willard v. Davis*, 881 S.W.2d 907, 912 (Tex. App.—Fort Worth 1994, orig. proceeding) (noting statutory stay of all proceedings includes discovery). If the trial court determines that the motion to dismiss is meritorious, it "shall" grant the motion and dismiss the claimant's asbestos-related and silica-related claims without prejudice. Tex. Civ. Prac. & Rem. Code Ann. § 90.007(c). As explained below, a dismissal could result in extreme prejudice depending on whether the limitations period has expired. Hence, the effect of failing to serve a Chapter 90 report is different and more onerous because of the requirements of section 90.007.

### 3. *Felder v. Casey*

Next, appellee argues that the report requirements under Chapter 90 are preempted because they are akin to the notice-of-suit requirements which were determined by the United States Supreme Court to be preempted in *Felder v. Casey*. 487 U.S. 131. We conclude the Supreme Court's analysis is instructive notwithstanding the fact that the report requirements of Chapter 90 clearly differ from the notice-of-claim requirements examined in *Felder*.

In *Felder*, the Court considered whether a Wisconsin notice-of-claim statute was preempted in a federal section 1983 action. *Id.* at 134–137.[7] The Wisconsin statute provided, in relevant part, that no action may be brought against the government or its officers unless a claimant provided written notice of the claim within 120 days of the alleged injury. *Id.* at 136. A claimant also was required to submit to the governmental defendant an itemization of relief requested, and the governmental defendant had 120 days to grant or deny such relief. *Id.* at 136–37. Succinctly, the Supreme Court determined that the state procedural law was preempted because it conflicted in "its

---

[7] Section 1983 provides claimants a right of redress against governmental employees for violating the claimant's federal rights. 42 U.S.C.A. § 1983.

purpose and effects with the remedial objectives of [section] 1983, and because its enforcement in such actions [would] frequently and predictably produce different outcomes in [section] 1983 litigation based solely on whether the claim is asserted in state or federal court." *Id.* at 138.

As we have done regarding FELA, the Supreme Court discussed the purposes of section 1983:

> Section 1983 creates a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority. As we have repeatedly emphasized, "the central objective of the Reconstruction-Era civil rights statutes . . . is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." Thus, [section] 1983 provides "a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation" and is to be accorded "a sweep as broad as its language."

*Id.* at 139 (citations omitted). The Court also recognized the Wisconsin notice-of-claim and exhaustion requirements were primarily intended to benefit governmental defendants by preventing meritless claims and controlling liability expenses. *Id.* at 142–44. However, the Court explained these goals were "patently incompatible with the compensatory goals of" section 1983—goals which sought to subject governmental employees to liability. *Id.* at 143–46.

> States, however, may no more condition the federal right to recover for violations of civil rights than bar that right altogether, particularly where those conditions grow out of a waiver of immunity which, however necessary to the assertion of state-created rights against local governments, is entirely irrelevant insofar as the assertion of the federal right is concerned, and where the purpose and effect of those conditions, when applied in [section] 1983 actions, is to control the expense associated with the very litigation Congress has authorized.

*Id.* at 144 (citations omitted).

Finally, the Court explained why section 1983 likewise preempted the exhaustion provision of the Wisconsin statute. Declaring that states may not place a condition on

13

vindication of a federal right, the Court determined that the exhaustion requirements, albeit easily and inexpensively satisfied, were inconsistent with the remedial purposes of section 1983, particularly "the notion that a State could require civil rights victims to seek compensation from offending state officials before they could assert a federal action in state court." *Id.* at 149. "[T]o the extent the exhaustion requirement is designed to sift out 'specious claims' from the stream of complaints that can inundate local governments in the absence of immunity, we have rejected such a policy as inconsistent with the aims of federal legislation." *Id.* (citation omitted).

### 4. Application of *Felder* in Present Suit

We recognize the differences between *Felder* and the present case. For example, the Wisconsin statute applied only to suits against governmental defendants, in direct contravention to section 1983 which was specifically intended to subject governmental employees to liability. *Id.* at 144–46. Here, Chapter 90 applies to all defendants in asbestos and silica suits, not just railway companies engaged in interstate commerce. Additionally, although requiring claimants to provide an accurate picture of the underlying incident before litigation commences may benefit both claimants and governmental defendants, the primary purpose of the Wisconsin statute was to benefit governmental defendants by reducing litigation costs and allowing them an opportunity to prepare a stronger case. *Id.* at 143, 145, 150. The legislative intent behind Chapter 90 was perhaps not so defendant-friendly because, aside from protecting companies and jobs negatively impacted by the deluge of asbestos-related and silica-related claims, the Legislature expressly intended to expedite relief for those actually suffering from asbestos-related and silica-related injuries. Tex. Civ. Prac. & Rem. Code Ann. § 90.001 cmts. (g)–(n); *see also In re Quigley Co., Inc.*, 383 B.R. 19, 28–29 (Bankr. S.D.N.Y. 2008) (explaining purposes behind several state asbestos-related report requirement statutes).

Despite these differences, there are several key similarities between *Felder* and the instant case. First, section 1983 and FELA are remedial, intended to provide groups with

14

historically unequal access to legal remedies the ability to seek and receive adequate compensation for injuries. Specifically, the purpose behind section 1983 was to ensure access to courts for persons who are deprived of civil rights instead of having to seek redress from governmental agencies not known for protecting civil rights. *See Burnett v. Grattan*, 468 U.S. 42, 50–51 (1984); *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 290 (1984); *Felder*, 487 U.S. at 147–48; *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 505 (1982). The primary purpose of FELA was to shift part of the risks inherent in dangerous railway work from employees to employers by eliminating harsh defenses, prohibiting pre-injury releases, and reducing the standard of proof for causation. *See McBride*, 131 S.Ct. at 2638; *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 144–45 (2003).

Second, the challenged state statutes here and in *Felder* benefit defendants by requiring claimants to disclose merits-related information regarding their claims in order to save litigation costs and prevent frivolous suits. The report requirements under sections 90.003 and 90.004 are "directed at assuring reliable expert confirmation" of asbestos-related and silica-related illness. *See In re GlobalSantaFe*, 275 S.W.3d at 486–88. Many of these requirements—such as providing a detailed occupational and exposure history, including nature, duration, and frequency of exposure, and a physician opinion that "to a reasonable degree of medical probability, exposure to asbestos was a cause of the [cancer]" or "inhalation of silica was a substantial contributing factor to that cancer"—likely oblige the claimant to obtain information from the railroad employer—a party who may not be readily forthcoming with inculpatory evidence regarding exposure of its employees to asbestos and silica.[8]

Furthermore, as mentioned above, unlike *In re GlobalSantaFe*, section 90.007 applies in this case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 90.007; *In re*

---

[8] For example, a physician may not be willing to opine that asbestos or silica exposure was a cause of a claimant's injury unless the physician knows the claimant's exposure history—information most likely possessed by the defendant railway company.

15

*GlobalSantaFe*, 275 S.W.3d at 481. Comparable to the Wisconsin statute, Chapter 90 arms a defendant with the option to file a motion to dismiss based on the claimant's failure to timely serve a sufficient report, thereby staying all court proceedings, including discovery. Tex. Civ. Prac. & Rem. Code Ann. § 90.007(a), (d); *see also Felder*, 487 U.S. at 144 (explaining the Wisconsin statute "confers on governmental defendants an affirmative defense that obligates the plaintiff to demonstrate compliance with the notice requirement before he or she may recover at all"). If the trial court agrees that the claimant failed to comply with the report requirements, the case shall be dismissed without prejudice. Tex. Civ. Prac. & Rem. Code Ann. §§ 90.007(c), 90.010(e). Although the dismissal is denominated "without prejudice," it could often have a prejudicial effect because the limitations period may expire before a claimant has the opportunity to conduct sufficient discovery to prepare a Chapter 90 report.[9]

In effect, the Chapter 90 report requirements and dismissal provision force a claimant to respond to a no-evidence motion for summary judgment without adequate time for discovery. *See* Tex. R. Civ. P 166a(i) (authorizing parties to file no-evidence motion for summary judgment after adequate time for discovery); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (recognizing Federal Rule of Civil Procedure 56 allows parties to file no-evidence motions for summary judgment after an adequate time for discovery); *cf. also Cruz v. Chang*, 400 F. Supp. 2d 906, 914–15 (W.D. Tex. 2005) (determining Texas report requirements in medical-malpractice case influence

---

[9] The statute of limitations for a FELA action is three years from the date a cause of action accrues. 45 U.S.C.A. § 56. The limitations period relative to an occupational-disease claim under FELA accrues "when the employee becomes aware of his disease and its cause." *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 358 (3d Cir. 1986) (citing *Urie v. Thompson*, 337 U.S. 163, 169–70 (1949) (holding silicosis claim accrued when the disease manifested itself)). The key inquiry is whether the plaintiff has knowledge of an injury and its cause, but this does not require that the plaintiff know a legal wrong has occurred, *i.e.* that the defendant is legally blameworthy. *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996) (citing *United States v. Kubrick*, 444 U.S. 111, 122–23 (1979)). The statute of limitations begins to run when a reasonable person knows, or in the exercise of reasonable diligence should have known, of the injury and that the injury is work-related. *Id.*; *Bealer v. Mo. Pac. R. Co.*, 951 F.2d 38, 39 (5th Cir. 1991); *Minyard v. Mo. Pac. R. Co.*, 889 S.W.2d 10, 11 (Tex. App.—Tyler 1994, no writ).

16

substantive outcomes and protect defendants from "a full battery of discovery and protracted litigation prior to dismissal of a non-meritorious lawsuit"). Such a situation was exemplified here: after KCSR filed its motion to dismiss, appellee filed a motion to compel production of pathology evidence from a hospital and requested an opportunity for his experts to review the evidence before preparing reports.

This also distinguishes the instant case from *Norfolk Southern Railway Co. v. Bogle*. 875 N.E.2d 919 (Ohio 2007). In *Bogle*, the Supreme Court of Ohio considered whether FELA preempted an Ohio statute requiring the plaintiff claiming a non-malignant asbestos-related injury to serve a medical report within thirty days of filing suit. *Id.* at 921. The court concluded there was no preemption because the sanction for failing to timely serve the report was an administrative *dismissal during which the statute of limitations was tolled until the claimant could serve a sufficient report*. *Id.* at 926. In our situation, there is no tolling following dismissal.[10]

The *Bogle* court also recognized that there was uniformity between Ohio and federal procedure because the federal courts initiated in 1991 an MDL docket for asbestos-related cases. *Id.* at 926–27; *see also* 28 U.S.C.A. 1407(a) (explaining MDL courts address pretrial proceedings). Similar to the Georgia statute, the federal MDL panel issued Administrative Order No. 8 ("AO No. 8") requiring claims not supported by a medical report to be administratively dismissed with tolling of the limitations period until submission of sufficient medical evidence. *Bogle*, 875 N.E.2d at 926–27.

However, when appellee filed the present suit during February 2011,[11] AO No. 8 had been replaced by Administrative Order No. 12 (2009) ("AO No. 12"). Pursuant to

---

[10] We acknowledge that under section 16.0031 of the Civil Practice and Remedies Code, the limitations period on claims involving asbestos-related or silica-related injuries do not accrue until the earlier of the date the claimant serves a sufficient Chapter 90 report or the exposed person's death. Tex. Civ. Prac. & Rem. Code Ann. § 16.0031 (West 2011). However, this section does not apply because Oney has asserted FELA claims and thus the federal statute of limitations applies. *See Maurizi v. Goldsmith*, 84 F. Supp. 2d 455, 463 (S.D.N.Y. 2000) (recognizing state law may not be used to extend federal limitations period). Furthermore, the exposed person in this case has died.

[11] Beginning December 2011, asbestos claims were no longer transferred to the asbestos MDL

17

AO No. 12, claimants were required to submit medical reports similar to those required by Chapter 90:

> Each plaintiff asserting a claim based upon an alleged asbestos-related malignancy [or alleged non-malignant injury or condition] shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.
>
> . . .
>
> Each report or opinion submitted hereunder shall be based upon objective and subjective data which shall be identified and descriptively set out with the report or opinion.

AO No. 12, provision 4.[12]

Although not specified in the text of AO No. 12, the MDL panel required claimants to serve authenticated reports which include a diagnosis of symptomatic asbestos-related disease based on medically accepted principles and exposure history. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 278 F.R.D. 126, 131, 133 (E.D. Pa. 2011). Claimants whose cases were transferred to the MDL docket in February 2011 were required to file a report within thirty days from the date of the transfer. AO No. 12, provision 12. "The court *may* dismiss pursuant to F.R.C.P. 41(b) the cases of any plaintiffs who fail to comply with the requirements set forth." AO No. 12, provision 6 (emphasis added); *compare with* Tex. Civ. Prac. & Rem. Code Ann. § 90.007(c) (requiring courts to dismiss claims if the motion to dismiss has merit). Unless a dismissal order states otherwise, dismissals pursuant to Federal Rule of Civil Procedure 41(b) are with prejudice. Fed. R. Civ. P. 41(b); *see also In re Asbestos Prods. Liab. Litig. (No. VI)*, 278 F.R.D. at 131–32.[13]

---

docket. *In re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377 (U.S. Judicial Panel on Multidistrict Litigation 2011).

[12] At the time this opinion was issued, AO No. 12 was available at http://www.paed.uscourts.gov/documents/MDL/MDL875/adord12.pdf (last visited July 2012).

[13] We also note that at some point, a report requirement similar to AO No. 12 was required in the federal silica MDL docket. *See In re In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 156 &

There are instances of cases pending in the federal asbestos MDL Docket in which FELA claims were asserted.[14]  Although none of these cases involves the legal question of whether FELA claimants are required to comply with AO No. 12, at least one FELA claimant filed an AO No. 12 report.  *See Robinson v. Ill. Cent. R. Co.*, 2011 WL 4907401, at *1 n.1 (E.D. Pa. Feb. 14, 2011) (noting claimant submitted medical records in accordance with AO No. 12).  However, we note MDL panels "may prescribe rules for the conduct of its business not inconsistent with Acts of Congress and the Federal Rules of Civil Procedure."  28 U.S.C.A. § 1407(f).  We have not found any case in which a federal court has determined whether AO No. 12 is inconsistent with FELA.  *See Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 879 (7th Cir. 2001) (explaining that federal rules inconsistent with an act of Congress are superseded, not preempted).  Accordingly, the fact that FELA claimants asserting asbestos-related injuries may have been subject to AO No. 12 does not foreclose this court from holding that Chapter 90 report requirements are preempted.

Furthermore, claimants unable to comply with AO No. 12 may avoid dismissal by advancing a legitimate ground for noncompliance.  *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 278 F.R.D. at 132.  Presumably, a legitimate ground would be inability to secure information necessary to satisfy the report requirements.  Under the provisions of Chapter 90 applicable to this case, nothing authorizes a trial court to extend the deadline for the claimant to serve a report or to allow the claimant to conduct discovery after a

n.12 (E.D. Pa. 2009); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 575–75 & n.18 (S.D. Tex. 2005) (citing Administrative Order No. 4, which required each plaintiff to create a specific fact sheet).

[14] *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 2012 WL 1231840 (E.D. Pa. March 20, 2012); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 2012 WL 1137006 (E.D. Pa. March 13, 2012); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 2012 WL 661673 (E.D. Pa. Feb. 8, 2012); *McCullom v. Allen-Bradley Co.*, 2011 WL 6026605 (E.D. Pa. Dec. 2, 2011); *McElroy v. Ill. Cent. R.R. Co.*, Civil No. 05-174-GPM, 2011 WL 4074144 (S.D. Ill. Sept. 13, 2011); *In re In re Asbestos Prods. Liab. Litig. (No. VI)*, 2011 WL 3925098 (E.D. Pa. Sept. 6, 2011); *In re Asbestos Prods. Liab. Litig. (No. IV)*, 2011 WL 3919375 (E.D. Pa. Aug. 10, 2011); *Maynor v. Ill. Cent. Gulf R.R. Co.*, 2011 WL 4907756 (E.D. Pa. Feb. 10, 2011); *Bludworth v. Ill. Cent. R.R. Co.*, 2011 WL 4916913 (E.D. Pa. Feb 10, 2011).

motion to dismiss is filed and the stay is in effect.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 90.006, 90.007.

Accordingly, we conclude that the applicable Chapter 90 report requirements and dismissal provision impose an unnecessary burden on appellee's rights of recovery under, and interfere with the remedial purposes of, FELA.  *See Brown*, 338 U.S. at 295–99 (determining state pleading rule requiring court to construe pleadings most strongly against pleader interfered with plaintiff's federal rights under FELA).  Nothing in our holding relieves appellee from the burden of presenting reliable, admissible evidence supporting his FELA claim in future proceedings.  *See id.* at 299 (recognizing its determination that FELA preempted state pleading requirement did not relieve plaintiff from presenting sufficient evidence at trial).  KCSR's sole appellate issue is overruled.

We affirm the trial court's interlocutory order.


/s/     Charles W. Seymore
        Justice


Panel consists of Justices Seymore, Boyce, and Mirabal.[15] (Boyce, J., Dissenting)

---

[15] Senior Justice Margaret Garner Mirabal sitting by assignment.