

# NUMBER 13-18-00092-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RAMONA ROGERS, M.D., MODESTO ZAMBRANO,
STEPHANIE CUMPIAN, ROLANDO FLORES,
HECTOR ONTIVEROS, PRISCILLA NIETO,
SONIA HERNANDEZ-KEEBLE, BLAS ORTIZ JR.,
DAVID MORON, M.D., JAIME FLORES AND
RIO GRANDE STATE CENTER,                                          Appellants,

v.

DAVID SAXON BAGLEY, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF JEREMIAH RAY BAGLEY,                          Appellee.

On appeal from the 444th District Court
of Cameron County, Texas.

# O P I N I O N

Before Chief Justice Contreras and Justices Rodriguez and Benavides[1]
Opinion by Justice Benavides

[1] The Honorable Nelda V. Rodriguez, former Justice of this Court, was a member of the panel when this case was orally argued but did not participate in this decision because her term of office expired on December 31, 2018.

The question before us is whether a civil rights claim brought under 42 U.S.C. § 1983 that alleges excessive force against health care providers and a state hospital is subject to the expert report requirement of § 74.351 of the civil practice and remedies code  See 42 U.S.C. § 1983; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.  Appellee David Saxon Bagley, individually and as representative of the estate of Joshua Ray Bagley, sued the Rio Grande State Center (RGSC) and a number of its employees for the death of his son Joshua who died after he was physically restrained at RGSC by RGSC staff.

Appellants, Ramona Rogers, M.D., Modesto Zambrano, Stephanie Cumpian, Rolando Flores, Hector Ontiveros, Priscilla Nieto, Sonia Hernandez-Keeble, Blas Ortiz Jr., David Moron, M.D., Jaime Flores, and RGSC, argue that Bagley's claims are healthcare liability claims (HCLCs) that must be dismissed for Bagley's failure to file an expert report pursuant to § 74.351(b).   See TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. By two issues, appellants appeal the trial court's denial of their motions to dismiss Bagley's claims  Id.  We affirm.

## I.  BACKGROUND

Joshua was a 37-year-old man with mental health issues who was involuntarily committed to RGSC for several months before he died.  On February 7, 2015, Joshua allegedly struck a staff member who was assigned to monitor him.  Immediately after, five other staff members forcibly restrained Joshua.  In doing so, they tackled him and pinned him to the floor for approximately ten minutes.  While he was restrained, a staff member forcibly administered an injection to calm Joshua.  After Joshua was released

2

from restraint, he returned to his room but was disoriented and unsteady. Joshua went into cardiac arrest shortly thereafter. RGSC staff performed CPR and called EMS. Joshua was pronounced dead at the hospital shortly thereafter.

Joshua's autopsy reflected numerous injuries. He was bruised; his thoracic spinous processes at T-2 through T-7 were fractured; aspects of his right ribs 4 through 9 were fractured and displaced; aspects of his left ribs 8 through 10 were fractured and displaced, resulting in laceration of the parietal pleura; both lungs were lacerated; his spleen was lacerated; and he had blood in his pleural and peritoneal cavities. The medical examiner reported Joshua's cause of death to be "excited delirium due to psychosis with restraint-associated blunt force trauma."

Bagley's original petition asserted negligence under the Texas Tort Claims Act (TTCA), and civil rights claims pursuant to §§ 1983 and 1988. *See* 42 U.S.C. §§ 1983, 1988; TEX. CIV. PRAC. & REM. CODE ANN. ch. 101. Bagley filed a first amended petition before any of the defendants filed answers and again asserted negligence claims under the TTCA and civil rights claims. *See* 42 U.S.C. §§ 1983, 1988; TEX. CIV. PRAC. & REM. CODE ANN. ch. 101.

Appellants responded to the suit with general denials, asserted application of Texas civil practice and remedies code chapters 74 and 108, official immunity, and sought dismissal pursuant to § 101.106(e) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. chs. 74, 108, § 101.106(e).

Appellants also filed a motion to dismiss for Bagley's failure to serve expert reports in August 2017. *See id.* § 74.351(b). Appellants argued that Bagley's claims constituted HCLCs. Bagley responded that § 74.351 did not apply because he sought

3

relief under the civil rights statute § 1983 for excessive force. In response, Bagley attached the autopsy report, Joshua's death certificate, and the report of the Office of Inspector General from the Texas Health and Human Services which concluded that RGSC employees used improper restraint techniques.

The trial court held a non-evidentiary hearing during which Bagley orally nonsuited RGSC. On January 30, 2018, Bagley filed his fourth amended petition that nonsuited RGSC and all non-constitutional claims from this action. The trial court denied the motion to dismiss on January 30, 2018. Appellants filed this interlocutory appeal. *See id.* § 51.014(a)(9).

## II.    RGSC

We must first determine whether RGSC is a proper party to the appeal. Bagley non-suited his claims against RGSC which was no longer a party at the time the motion to dismiss was denied or when the notice of interlocutory appeal was filed. RGSC argues that its motion to dismiss sought dismissal with prejudice and an award of mandatory reasonable attorneys' fees and costs before the nonsuit, and therefore its claim for dismissal, costs, and fees survived the nonsuit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

"Under the Texas Rules of Civil Procedure, [a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (quoting TEX. R. CIV. P. 162). However, a nonsuit or dismissal "shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal

. . . ." Tex. R. Civ. P. 162; *see Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008); *Fulp v. Miller*, 286 S.W.3d 501, 509 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) (holding that a motion to dismiss pursuant to § 74.351(b) constitutes a motion for sanctions). Accordingly, we hold that RGSC may properly appeal the trial court's failure to grant its motion to dismiss with prejudice and failure to award attorneys' fees and costs.

### III.    HEALTH CARE LIABILITY CLAIMS

By their first issue, appellants argue that Bagley's claims are HCLCs. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 74. "Determining whether claims are HCLCs requires courts to construe the TMLA [Chapter 74]. We review issues of statutory interpretation de novo." *Loaisiga v. Cerda*, 379 S.W.3d 248, 254–55 (Tex. 2012).

According to the statutory definition, a lawsuit is a HCLC if it has the following three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. Tex. Civ. Prac. & Rem. Code § 74.001(a)(13); *see Loaisiga.* 379 S.W.3d at 255.

RGSC is a state hospital that provides inpatient and outpatient mental health services and is defined to be a health care institution. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(11). A health care provider is defined as any employee of a health care provider or health care institution. *Id.* § 74.001(a)(12)(B)(ii). Bagley's claims meet the first of the three-part test of a HCLC; they are against healthcare providers, a healthcare institution, and physicians.

5

The second part is whether Bagley's claims are for a departure from accepted standards related to health care. *See id.* § 74.001(a)(13). Bagley asserts that the staff used excessive force in restraining his son. Analysis of the cause of action "focuses on the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted." *Loaisiga*, 379 S.W.3d at 255. Thus,

> claims premised on facts that could support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety . . . directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.

*Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "The broad language of the [Texas Medical Liability Act] TMLA evidences legislative intent for the statute to have expansive application." *Loaisiga*, 379 S.W.3d at 256. "The breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Id.* The presumption is rebuttable. *Id.*

Texas courts have interpreted HCLCs broadly to include an employee who was injured while employed by a health care facility or a person injured by a physician who committed an assault. *See Loaisiga*, 379 S.W.3d at 258–59; *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 174–75 (Tex. 2012) (holding that claims for on-the-job injuries against the hospital sustained by a psychiatric technician caused by a patient were HCLCs); *Morrison* v. *Whispering Pines Lodge I, L.L.P.*, 428 S.W.3d 327, 332 (Tex. App.—Texarkana 2014, pet. denied) (holding nursing home employee's claim for injury from slip

6

and fall on wet floor constituted a HCLC).

In *Morrison*, the court concluded "that, if there is at least an indirect connection between Morrison's claim and the provision of health care, we are bound to rule that the claim is a HCLC." 428 S.W.3d at 332; *see also Oak Park, Inc. v. Harrison*, 206 S.W.3d 133, 135 (Tex. App.—Eastland 2006, no pet.).

In *Oak Park,* a patient receiving treatment for addiction, Harrison, was injured in the facility's common area when another patient attempted to escape. 206 S.W.3d at 141 While the escaping patient was being restrained, Harrison was injured in the melee. Harrison sued alleging negligence and premises liability causes of action. *Id.* He did not file an expert medical report and the trial court declined to dismiss his claims. *Id.* at 136. The court of appeals reversed and rendered judgment dismissing Harrison's claims with prejudice after holding that his "claims are health care liability claims." *Id.* at 141.

However, in *Ross v. St. Luke's Episcopal Hospital*, the Texas Supreme Court held that a premises liability case is not necessarily a HCLC unless there is a nexus between the safety standards allegedly violated and the provision of health care. 462 S.W.3d 496, 504–05 (Tex. 2015) (holding that claim for injuries of a visitor who slipped and fell near the hospital exit doors was not a HCLC). The pivotal issue is whether the safety standards implicated the defendant's duties as a health care provider. *Id.* at 505.

Although Bagley alleged excessive force, his claims are brought against health care providers in a health care institution over the restraint of a patient. Restraint of mental health patients implicates healthcare safety issues. *See* TEX. HEALTH & SAFETY CODE ANN. § 552.052 (requiring training of state hospital employees on the "safe and proper use of restraints," "prevention and management of aggressive or violent behavior,"

7

and "emergency response," among other subjects). Under Texas law, Bagley's claims are directly related to the safety of mental health patients, the second part of the test for a HCLC.

The third and final portion of the test is whether Joshua's death was caused by the alleged departure from accepted standards. Bagley asserts that the providers used excessive force in restraining Joshua which caused his death thus meeting the third part of the test for a HCLC. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *Oak Park*, 206 S.W.3d at 141. We sustain appellants' first issue.

## IV. FEDERAL CIVIL RIGHTS CLAIMS

Bagley argued to the trial court that 42 U.S.C.§ 1983 preempted Chapter 74. *See* 42 U.S.C. § 1983; TEX. CIV. PRAC. & REM. CODE ANN. ch. 74. By appellants' second issue, they argue that § 1983 does not preempt the requirements of § 74.351 that a person who asserts a HCLC is required to file and serve an adequate medical expert's report within 120 days after each defendant has answered the suit. *See* 42 U.S.C. § 1983; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.

## A. Standard of Review and Applicable Law

Whether § 1983 preempts § 74.351 is a question of law that we review de novo. *See In re GlobalSantaFe Corp.*, 275 S.W.3d 477, 489 (Tex. 2008) (orig. proceeding); *DHL Express (USA) Inc. v. Falcon Express Int'l, Inc.*, 408 S.W.3d 406, 410 (Tex. App.— Houston [1st Dist.] 2013, pet. denied); *see also Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 278 (5th Cir. 1994).

The United States Constitution provides that the laws of the United States are "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the

Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Thus, when a state law conflicts with federal law, it is preempted and has no effect. *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011); *Maryland v. Louisiana*, 451 U.S. 725, 747 (1981); *BIC Pen Corp. v. Carter*, 251 S.W.3d 500, 504 (Tex. 2008); *Kan. City S. Ry. Co. v. Oney*, 380 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Whether substantive or procedural, state law is preempted when it interferes with or restricts remedies under a federal statute.") (citing *Felder v. Casey,* 487 U.S. 131, 138 (1988)). However, the Supreme Court "limits the preemption doctrine by presuming that Congress did not intend to displace state law." *Great Dane Trailers v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001) (citing *Maryland*, 451 U.S. at 748)*.*

In resolving questions of inconsistency between state and federal law, courts must look not only at the particular federal statutes and constitutional provisions, but also at "the policies expressed in [them]." *Moore v. Brunswick Bowling & Billiards Corp.*, 889 S.W.2d 246, 248 (Tex. 1994). Of particular importance is whether application of state law "would be inconsistent with the federal policy underlying the cause of action under consideration." *Johnson v. Ry Express Agency, Inc.*, 421 U.S. 454, 465 (1975). Section 1983 is "one of the 'Reconstruction civil rights statutes' that this Court has accorded a sweep as broad as [their] language." *Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971) (quoting *United States v. Price*, 383 U.S. 787, 801 (1966)). When the federal statute does not directly speak to preemption, the court "must be guided by the goals and policies of the Act" in determining preemption. *Int'l Paper Co. v. Oulette,* 479 U.S. 481, 493 (1987); *Slade v. City of Marshall, Tex.*, 814 F.3d 263, 267 (5th Cir. 2016).

9

### B.  Preemption Analysis

#### 1.  Federal Causes of Action Brought in State Court

Federal and state courts have concurrent jurisdiction over several federal causes of action including those brought pursuant to § 1983).   *See* 42 U.S.C. § 1983; *see also Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 245 (1942) (holding concurrent jurisdiction over Jones Act cases); *Scott v. Atchison, Topeka & Santa Fe Ry Co.*, 572 S.W.2d 273, 281 (Tex. 1978) (recognizing that federal law controls substantive rights in FELA claims brought in state court).

When a litigant files suit in state court to recover under a federal statute, he is entitled to the full benefit of federal law.   *See Garrett*, 317 U.S. at 244 (holding that state rules regarding construction of a release had to give way to admiralty rules relating to seamen); *Scott v. Godwin*, 147 S.W.3d 609, 615 (Tex. App.—Corpus Christi–Edinburg 2004, pet. dism'd).   State courts therefore apply federal substantive law and state rules of procedure.   *See Scott*, 572 S.W.2d 273, 276; *Mo. Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 870 (Tex. 1973) (discussing FELA claims).   "[W]here state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'"   *Felder*, 487 U.S. at 138 (quoting *Brown v. W. Ry. of Ala.*, 338 U.S. 294, 296 (1949)).

#### 2.  Purpose and Scope of § 1983

We must determine whether the state procedural law stands in the way of accomplishing the goal of the federal statute.   "[T]he central purpose [of § 1983] is to provide compensatory relief to those deprived of their federal rights by state actors." *Felder*, 487 U.S. at 141; *see Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Lynch v.*

*Household Fin. Corp.*, 405 U.S. 538, 543 (1972) (tracing history of § 1983 back to the Civil Rights Act of 1866 which guaranteed broad and sweeping protection of basic civil rights). "Since the purposes and objectives of § 1983 are themselves broad—compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law—the preemptive sweep of § 1983 is obviously considerable." *Beeks v. Hundley*, 34 F.3d 658, 661 (8th Cir. 1994) (citing *Robertson v. Wegmann*, 436 U.S. 584, 590–91 (1978)).

The broad scope of § 1983 provides a remedy for claims of excessive force by state actors against persons involuntarily committed for mental health reasons. *See Davis v. Rennie*, 264 F.3d 86, 117 (1st Cir. 2001) (affirming judgment in favor of involuntarily committed mental patient against mental hospital personnel who allegedly used excessive force during restraint); *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) (reviewing § 1983 claims made by the family of a mental patient who died after alleged excessive force during take down); *see also Rushing v. Simpson*, No. 4:08CV1338, 2009 WL 4825196, *9 (E.D. Mo. Dec. 11, 2009) (dismissing excessive force claims on summary judgment after finding force used was reasonable)*; Nicolaison v. Brown*, No. Civ. 05-1255, 2007 WL 851616, *11 (D. Mn. Feb. 6, 2007) (Mag. op.) (denying summary judgment on excessive force claim against officers without expert testimony). The standard used for violations of the Fourteenth Amendment by use of excessive force was set by *Kingsley v. Hendrickson*: whether "the force purposely or knowingly used against [the plaintiff] was objectively unreasonable" under the existing facts and circumstances. ___ U.S. ___, 135 S.Ct. 2466, 2473 (2015).

### 3. Purpose and Scope of TMLA

In contrast to the broad remedial aim of § 1983 for violations of constitutional requirements by state actors, the TMLA was enacted in 1977 to combat a medical malpractice crisis in Texas. *See Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011); *State v. Emeritus Corp.*, 466 S.W.3d 233, 243 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied). The current expert report requirement became part of the revised framework of the TMLA after 2005. Section 74.351(b) requires a trial court to dismiss a plaintiff's claims with prejudice and to award the defendant's attorneys' fees and costs if a plaintiff fails to file a timely and adequate medical expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). Thus, the expert report requirement is more than a procedural rule; it "'is a threshold requirement for the continuation of a lawsuit.'" *Med. Hosp. of Buna Tex., Inc. v. Wheatley*, 287 S.W.3d 286, 294 (Tex. App.—Beaumont 2009, pet. denied). Section 74.351 further provides limitations on discovery and requires dismissal of a plaintiff's claims with prejudice early in the litigation if the plaintiff fails to timely file a compliant report. *See Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 298 (5th Cir. 2016) (declining to apply § 74.351(b) in cases brought in federal court because it is inconsistent with the federal rules of procedure); *see also Med. Hosp. of Buna Tex., Inc.*, 287 S.W.3d at 294.

As discussed, the TMLA has been interpreted broadly. As an example, persons who allege intentional assault against a health care provider are required to file expert reports even if the conduct alleged constitutes a criminal act. *See Loaisiga*, 379 S.W.3d at 256 (holding that allegations of assault by patient against physician who fondled her breast during a medical exam for flu symptoms required an expert report pursuant to §

12

74.351(b) because she failed to conclusively negate that her claim was a HCLC).[2] Excessive force claims, like assault claims, do not ordinarily arise in the provision of health care.

### 3. Discussion

After considering the purpose and scope of both § 1983 and the TMLA, the Court must determine whether the expert report requirement in § 74.351 is "consistent with the goals of the federal civil rights laws, or does the enforcement of such a requirement instead stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress?" *Felder*, 487 U.S. at 138; *see Haywood v. Drown*, 556 U.S. 729, 735 (2009).

The *Felder* Court held that a Wisconsin notice statute was preempted by § 1983 because it

> conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in a state court.

487 U.S. at 138. The *Felder* Court further explained*,*

> [A]pplication of the notice requirement burdens the exercise of the federal right by forcing civil rights victims who seek redress in state courts to comply

---

[2] When suing a healthcare provider, a plaintiff may avoid the expert report requirement only under the circumstances outlined below:

> [A] claim against a medical or health care provider for assault is not an HCLC if the record conclusively shows that (1) there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact, (2) the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and (3) the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

*Loasiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).

13

with a requirement that is entirely absent from civil rights litigation in federal courts. This burden, as we explain below, is inconsistent in both design and effect with the compensatory aims of the federal civil rights laws. Second, it reveals that the enforcement of such statutes in § 1983 actions brought in state court will frequently and predictably produce different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court. States may not apply such an outcome-determinative law when entertaining substantive federal rights in their courts.

*Id.* at 141.

In *Haywood*, the Court held that a New York statute that limited § 1983 claims against correctional officers to a single court with no right to a jury trial, no attorneys' fees, and strict notice provisions was preempted by federal law. 566 U.S. at 737, 742; *see also Godwin v. Mem'l Med. Ctr*, 130 N.M. 434, 443–44, 25 P.3d 273, 282 (N.M. Ct. App. 2001, no. cert.) (holding that tort claims notice requirement was preempted by the Emergency Medical Treatment and Active Labor Act).

Section 74.351 operates differently than the notice requirements at issue in *Felder* and in *Godwin.* Section 74.351's expert report requirement serves two purposes: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the plaintiff's claims have merit. *See Am. Transitional Care Ctrs of Tex. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001) (considering a previous version of TMLA); *McAllen Hosps., L.P. v. Gonzalez*, 566 S.W.3d 451, 456 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.); *see also Thilo Burzlaff, M.D., P.A. v. Weber*, No. 04-17-00520-CV, 2018 WL 1176378, at *6 (Tex. App.—San Antonio Mar. 7, 2018, no pet.).

As in *Hayward* which involved a statute designed to protect correctional officers from perceived frivolous claims for damages, the TMLA, including § 74.351, provides protection to health care providers, physicians, and institutions from perceived frivolous

claims and pretrial discovery.   *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 74; *Am. Transitional Care Ctrs of Tex.*, 46 S.W.3d at 877.[3]   Similarly to *Felder* and *Godwin*, the expert report requirement provides the state actors with early notice of the details of the claims against them and a means of early dismissal of those claims when the requirement is not met.   *See Felder*, 487 U.S. at 144; *Godwin*, 130 N.M. at 443–44, 25 P.3d at 282. In no other § 1983 action is a state plaintiff required to establish the merits of his or her claim against a state actor so quickly; instead, the ordinary rules of civil procedure apply. Although the expert report requirement does not uniquely discriminate against the federal right, it uniquely burdens the state court plaintiff under § 1983 differently than a similar plaintiff who sues in federal court.   That difference can be dispositive.   *Compare Bogart*, 257 S.W.3d 354, 373 (Tex. App.—Austin 2008, no pet.) (reversing trial court's finding that expert report was adequate and rendering judgment against plaintiff) *with Passmore*, 823 F.3d at 299 (reversing dismissal for failure to provide expert reports and allowing medical malpractice claim to proceed).

The Texas Supreme Court recognizes that state procedural rules must give way to federal preemption when they conflict with the goals of the federal statute.   *See In re GlobalSantaFe Corp.*, 275 S.W.3d at 489.   In *GlobalSantaFe Corp.*, the court found that a portion of civil practice and remedies code chapter 90 addressing asbestos and silicosis

---

[3] As the Texas Supreme Court explained:

> Because expert testimony is crucial to a medical-malpractice case, knowing what specific conduct the plaintiff's experts have called into question is critical to both the defendant's ability to prepare for trial and the trial court's ability to evaluate the viability of the plaintiff's claims. This makes eliciting an expert's opinions early in the litigation an obvious place to start in attempting to reduce frivolous lawsuits.

*Am. Transitional Care Ctrs of Tex. v. Palacios*, 46 S.W.3d 873, 876–77 (Tex. 2001).

injuries was inconsistent with the federal Jones Act. *Id.* It held that § 90.004(b) which imposed a threshold impairment requirement could not be applied in those cases. *Id.* ("We further conclude that Chapter 90 must not be interpreted to impose a higher standard of proof for causation than the federal standard applicable to Jones Act cases."). The *GlobalSantaFe* Court also held that other portions of Chapter 90, including the expert report component, were not preempted. *Id.* Unlike the expert report requirement in § 74.351(b) though, the chapter 90 requirement in the pre-2003 statute did not require dismissal of a plaintiff's claim or that discovery be stayed until a compliant report was filed. *See Oney*, 380 S.W.3d at 801 (discussing preceding version of §§ 90.003, 90.004, and 90.007); TEX. CIV. PRAC. & REM. CODE ANN. § 90.07(d).

In *Oney*, a FELA suit for a railroad worker's death from lung cancer arising out of his asbestos and silica exposure, the court of appeals held that portions of the 2005 version of Chapter 90 were preempted. *Oney*, 380 S.W.3d at 799. The goal of the FELA was to compensate railroad workers who were being injured and killed in their employment and for whom common law remedies had proved to be inadequate. *Id.* After considering the goals of FELA, the *Oney* court held that §§ 90.003, 90.004, and 90.007 were preempted because they interfered with FELA's goal of providing a broad remedy to injured railroad workers.[4] *Id.* at 808.

Appellants seek dismissal with prejudice, along with attorneys' fees and costs for Bagley's failure to file an expert medical report. *See* TEX. CIV. PRAC. & REM. CODE ANN.

---

[4] The current version of § 90.003 provides detailed requirements for expert medical reports for persons asserting an asbestos related injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 90.03. Section 90.004 provides similar requirements for persons asserting a silica-related injury. *Id.* § 90.04. Section 90.007 provides for dismissal of any suit in which a claimant fails to comply with the requirements of §§ 90.003 and 90.004. *Id.* § 90.007.

§ 74.351(b); *see also Med. Hosp. of Buna Tex.,* 287 S.W.3d at 294 ("Like dismissal under § 74.351, an award of costs and attorney's fees under § 74.351 is not discretionary."). After considering the goals of § 1983 to provide a broad remedy for redress of unconstitutional actions by state actors, and the different focus of Chapter 74, we hold that the expert report requirement of § 74.351 conflicts with the purpose of § 1983 and its application unfairly burdens a state court § 1983 claimant in a manner that can be dispositive. Accordingly, in this narrow class of cases, we hold that § 1983 preempts § 74.351 when claims for excessive force occur within a healthcare institution or against a healthcare provider or physician. *See Oney*, 380 S.W.3d at 808.

We overrule appellants' second issue.

## IV. CONCLUSION

Although we sustained appellants' first issue, because we hold that § 1983 preempts § 74.351, we affirm the trial court's order.

GINA M. BENAVIDES,
Justice

Delivered and filed the
13th day of June, 2019.